In the Matter of DANIELE LAUNDRIES, INC., Debtor.

In the Matter of DANIELE LINEN SUPPLY, INC., Debtor.

BEST MANUFACTURING, INC., Petitioner,

v.

WHITE PLAINS COAT & APRON COMPANY, INC., Jaymont Linen Supply, Inc. and Jaymont Laundry, Inc., Respondents,

Daniele Linen Supply, Inc., Judgment Debtor.

Bankruptcy Nos. 82 B 20373, 82 B 20374.
No. 83 Adv. 6152.

United States Bankruptcy Court, S.D. New York.

May 21, 1984.

Javits, Hinckley, Rabin & Engler, New York City, for Best Mfg., Inc.

Fensterheim & Fensterheim, New York City, for Jaymont Equities, Inc., Jaymont Linen, et al.

Sidney Turner, P.C., White Plains, N.Y., for trustee.

Kliegman, Goldstein, Israel & Cooper, New York City, for Sea Crest Linen Supply, Inc.

## DECISION ON COMPLAINT OF BEST MANUFACTURING, INC. TO SET ASIDE TRANSFERS MADE BY THE DEBTORS.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Best Manufacturing, Inc. ("Best"), a judgment creditor of one of the related debtors, Daniele Linen Supply, Inc. ("Daniele Linen") in the amount of $67,579.63, brought a state court action against the debtor to set aside certain transfers made by Daniele Linen as voidable under the Uniform Fraudulent Conveyances Act and the New York Bulk Sales Act. This action was removed to the Bankruptcy Court by the trustee in bankruptcy of Daniele Linen after orders for relief were entered in the involuntary Chapter 7 cases filed against Daniele Linen and its affiliated company, Daniele Laundries, Inc. ("Daniele Laundries"). See 34 B.R. 931. Best then proceeded to trial in the Bankruptcy Court

with respect to the issues originally raised in its state court action.

## FINDINGS OF FACT

1. Involuntary petitions in bankruptcy under Chapter 7 of the Bankruptcy Code, were filed with this court on June 16, 1982, against the debtors, Daniele Laundries, Inc. and Daniele Linen Supply, Inc. The debtors filed their answers in response to the petitions on July 15, 1982. Hearings were held and adjourned from time to time. The last hearing was held on December 15, 1982, at which time orders for relief were entered.

2. The debtor, Daniele Laundries, Inc. (Daniele Laundries") was engaged in the business of owning and operating a commercial laundry business located at 4–8 Herriot Street, Yonkers, New York. The debtor, Daniele Linen Supply, Inc. ("Daniele Linen") was located at the same address and was engaged in the rental of table cloths, tops, napkins, kitchen and hand towels, coats, aprons, uniforms and other linen supply rental items to restaurants, caterers, food and grocery stores and similar establishments.

3. Two-thirds of the stock of both debtors was owned by Louise Daniele prior to December 11, 1981. On that day, approximately six months before the involuntary petitions were filed, Louise Daniele sold for $5000 all her shares of stock in both debtors to Jaymont Equities, Inc., whose president and principal shareholder is Jay Botchman. The other one-third interest in the debtors was owned by Louise Daniele's daughter, Dolores Gallo.

4. Having obtained control of the two debtors, the principal of Jaymont Equities, Inc., Jay Botchman, then caused Daniele Laundries to sell all of its assets on December 11, 1981, the same day, to Jaymont Laundries, Inc., a corporation which Jay Botchman formed.

5. On December 11, 1981, the same day as the above transactions, Jay Botchman then caused Daniele Linen to sell all of its accounts receivable, linen supply accounts, inventory, other tangible assets and good will to Jaymont Linen Supply, Inc., another corporation formed by Jay Botchman. The purchase price for this transaction was the assumption by Jaymont Linen Supply, Inc. of all of the liabilities of Daniele Linen, which then totalled approximately $183,656.00.

6. On May 17, 1982, Jaymont Linen then sold to an independent entity, Sea Crest Linen Supply, Inc. ("Sea Crest") for $81,540, payable in 36 monthly installments, some of the assets originally owned by Daniele Linen. The balance of the assets acquired by Jaymont Linen from Daniele Linen were transferred by Jaymont Linen to White Plains Coat & Apron Company, Inc. ("White Plains Coat & Apron"), a linen supply company that is wholly owned and operated by Jay Botchman's brother, Allen Botchman, and Jay Botchman's nephew, Bruce Botchman.

7. There was no proof as to the financial condition of Jaymont Linen or Jaymont Laundries, nor was there any evidence as to what assets these businesses owned. Moreover, there was no evidence as to what fraction or portion of Jaymont Linen's business was represented by the acquired assets of Daniele Linen, nor for that matter, whether the assets which were subsequently transferred to Sea Crest and White Plains Coat & Apron comprised a major part of the materials, supplies, merchandise or other inventory of Jaymont Linen.

8. It was conceded by the attorney for White Plains Coat & Apron, Jaymont Linen and Jaymont Laundry that no bulk sales notice was ever served with respect to any of the foregoing transactions.

9. The plaintiff, Best Manufacturing, Inc. ("Best") was a creditor of Daniele Linen for goods previously sold and delivered during the period of May 11, 1981 through August 1, 1981, for which a judgment was entered in the New York Supreme Court, on March 11, 1982, in the sum of $67,579.63, with interest from that date.

10. On June 11, 1982 Best commenced a proceeding in the New York Supreme

Court, Westchester County, against White Plains Coat & Apron, Jaymont Linen and Jaymont Laundry for an order attaching the proceeds of the debt owed from Sea Crest to Jaymont Linen as part of Best's accompanying action to recover against the three respondents on the basis of an alleged fraudulent transfer of assets in violation of the New York Debtor and Creditor Law and the New York Bulk Sales Act.

11. In view of the fact that five days later, on June 16, 1982, involuntary petitions under Chapter 7 of the Bankruptcy Code were filed with this court against Daniele Linen and Daniele Laundry, the various state court actions involving the Daniele companies and the Jaymont entities could not proceed until a trustee in bankruptcy was appointed in the Daniele cases. After his appointment, the trustee in bankruptcy for Daniele Laundries and Daniele Linen removed the related state court cases to this court, including the action commenced by Best.

12. Additionally, by a summons and complaint, dated November 9, 1983, the trustee in bankruptcy of Daniele Laundries and Daniele Linen commenced an action in the Bankruptcy Court against Jaymont Equities, Inc., Jaymont Linen, Jaymont Laundries, Sea Crest Linen and White Plains Coat & Apron. The trustee asserted rights under 11 U.S.C. § 544(b) to set aside the transfer of assets of Daniele Laundries and Daniele Linen as fraudulent conveyances under the Uniform Fraudulent Conveyance Act and as voidable transfers under 11 U.S.C. §§ 548 and 550 of the Bankruptcy Code. This action is pending.

## DISCUSSION

The events giving rise to Best's state court complaint developed in two stages. First, having acquired an interest in Daniele Linen and Daniele Laundries in December, 1981, through the acquisition of two-thirds of their stock by Jay Botchman, who was the principal and president of Jaymont Linen, Jaymont Linen then purchased all of the assets of Daniele Linen, including accounts receivable, linen supply accounts,

inventory and good will. Additionally, Jaymont Laundries, another corporation controlled by Jay Botchman, purchased all of the equipment of Daniele Laundries. The purchase price for these transactions consisted of the purchaser assuming all of the outstanding obligations of the vendors. The second stage occurred about five months later when, in May 1982, the former Daniele assets were divided into two parcels; one was sold to Sea Crest Linen Supply, Inc. for $81,540 while the second parcel of former Daniele Linen assets was transferred by Jaymont Linen to White Plains Coat & Apron Company, Inc. a linen supply company owned and operated by Jay Botchman's brother and nephew. Although some funds from the transfer of assets to White Plains Coat & Apron were deposited in Jay Botchman's personal bank account, no funds from this transfer were ever received by the vendor company against which Best held a judgment, namely Jaymont Linen.

## STAGE ONE: STANDING TO OPPOSE THE DEBTORS' TRANSFERS

█ In so far as the transfer of equipment by Daniele Laundries to Jaymont Laundries is concerned, it is clear that Best is not a creditor of either entity. Best is a judgment creditor of Daniele Linen only and has no standing to question the transaction between two independent corporations which have no connection to, or relationship with, Best's state court action against Daniele Linen. Best has no interest in the equipment of Daniele Laundries, and therefore, it has no standing to question the transfer of this equipment to Jaymont Laundries.

█ Manifestly, as a judgment creditor of Daniele Linen, Best originally had a legitimate interest in the preservation of Daniele Linen's assets as a means for satisfying the state court judgment that Best obtained against Daniele Linen. However, once a trustee was appointed in the involuntary Chapter 7 bankruptcy cases against the Daniele companies, Best's status, as a party with standing to void transfers as

**408**

fraudulent conveyances or as defective bulk sales, was impaired by the superseding bankruptcy cases. It is axiomatic that a duly qualified trustee in bankruptcy represents the estate and is the only proper party to maintain any action under Code § 544(b), or the predecessor provision in § 70(e) of the former Bankruptcy Act, and that the creditors of the estate have no right to proceed independently in their own names or on behalf of the estate. *See Glenny v. Langdon,* 98 U.S. 20, 22, 27–31, 25 L.Ed. 43 (1878); *In re Mortgageamerica Corp.,* 714 F.2d 1266, 1275 (5th Cir.1983); *American Hardware Supply Co. v. Rubin,* 417 N.Y.S.2d 8 (2nd Dep't 1979); 4B Collier on Bankruptcy ¶ 70.92[2], at 1052 (L. King 14th ed. 1978). In the instant case, the trustee in bankruptcy of Daniele Linen has filed in this court an adversary proceeding to set aside the transfers by Daniele Linen and Daniele Laundries as voidable fraudulent transfers. In his pending action, the trustee in bankruptcy has invoked 11 U.S.C. § 544(b), which permits him to step into the shoes of an actual existing unsecured creditor, e.g. Best, "for the purpose of asserting causes of action under state fraudulent conveyances acts for the benefit of all creditors, not just those who win a judgment." *In re Mortgageamerica,* 714 F.2d at 1275 (citation omitted). Thus, the trustee's action supersedes Best's state court action, so that Best lacks standing to pursue its case against Jaymont Linen.

## STAGE TWO: JAYMONT LINEN'S TRANSFERS TO OTHERS

■ Best also regards itself as a creditor of Jaymont Linen because when Jaymont Linen acquired the assets of Daniele Linen, Jaymont Linen also assumed all of the liabilities, including Daniele Linen's judgment debt owed to Best. As a creditor of Jaymont Linen, Best contends that transfer of the Daniele Linen assets in the second stage of events to Sea Crest and White Plains Coat & Apron were also violative of state fraudulent conveyance acts and bulk sales laws. To the extent that Best's related and removed case seeks to recover for

the benefit of the creditors of Jaymont Linen, rather than for the creditors of the estate of the debtor, Daniele Linen, Best would not implicate or step on the shoes of the trustee in bankruptcy of Daniele Linen. Hence, Best might be able to recover on behalf of the creditors of Jaymont if Best could establish its case, which it failed to do.

■ Article 6 of the New York Uniform Commercial Code governs the propriety of bulk transfers. The key section is § 6–102, which provides:

§ 6–102. "Bulk Transfer"; Transfers Of Equipment; Enterprises Subject To This Article; Bulk Transfers Subject To This Article.

(1) A "bulk transfer" is any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory (Section 9–109) of an enterprise subject to this Article. "Bulk transfer" shall also include a transfer out of the ordinary course of business of a major part of the goods, wares and merchandise of a restaurant, or other food dispensing establishment.

(2) A transfer of a substantial part of the equipment (Section 9–109) of such an enterprise or of the equipment of a restaurant or other food dispensing establishment is a bulk transfer if it is made in connection with a bulk transfer of inventory, but not otherwise.

(3) The enterprises subject to this Article are all those whose principal business is the sale or rental of merchandise from stock, including those who manufacture what they sell and restaurants or other food dispensing establishments.

(4) Except as limited by the following section all bulk transfers of goods located within this state are subject to this Article.

N.Y.U.C.C. § 6–102 (McKinney Supp. 1983–1984).

It has been held that the sale of an entire business of supplying laundered coats and similar laundered articles, including the

stock of articles and all fixtures pertaining to such business, is a sale of the whole of a stock of merchandise and fixtures of the seller and was subject to Article 6 of the bulk sales laws. *Ben Bimberg & Co., Inc. v. Unity Coat and Apron Co., Inc.*, 150 Misc. 836, 270 N.Y.S. 580, (Sup.Ct.), *aff'd*, 240 A.D. 959, 268 N.Y.S. 881 (1st Dep't 1934). Section 6–102(3), as amended, now expressly refers to businesses not only engaged in sales, but also to "rental of merchandise from stock." However, Jaymont Linen did not sell its entire business to either Sea Crest or White Plains Coat & Apron, nor to both entities combined. Jaymont Linen merely sold the assets it acquired from Daniele Linen.

In § 6–102(1) of the New York Uniform Commercial Code, an included "bulk transfer" must consist of a "major part" of the merchandise of the transferor's business. In this case there was no proof as to the dimensions of Jaymont Linen's business, or as to the value of its materials, supplies, merchandise or other inventory. Accordingly, there has been no proof that the Daniele Linen assets that were transferred to Sea Crest and White Plains Coat & Apron comprised a "major part of" Jaymont's materials, supplies, merchandise or other inventory.

## FRAUDULENT CONVEYANCE LAWS

■ There was no evidence of any actual intent on the part of Jaymont Linen to hinder, delay, or defraud its creditors when it transferred Daniele Linen assets, which it previously acquired, to Sea Crest or to White Plains Coat & Apron. Therefore, Best's claims against Jaymont Linen must be considered in the context of constructive fraud without regard to actual intent, which is required under Section 276 of the New York Debtor and Creditor Law. In such case intent to defraud is presumed if specific statutory elements are established. The overriding common element in all of the constructive fraud sections under the New York Debtor and Creditor Law is that the obligation was incurred "without a fair consideration" and that an additional condition was found to exist.

Under Section 273 of the Debtor and Creditor Law, transfers of property are deemed fraudulent as to creditors and voidable without regard to actual intent if they are made without fair consideration and the party making the transfer is insolvent or is rendered insolvent thereby.[1] There was no proof that Jaymont Linen's sale of Daniele assets to Sea Crest for $81,540.00 was not a fair consideration. Moreover, there was no proof that after Jaymont Linen effected the transfers in question to Sea Crest and to White Plains Coat & Apron, Jaymont was insolvent or rendered insolvent.

Pursuant to Section 273–a of the Debtor and Creditor Law, transfers of property without fair consideration are voidable when the transferor is a defendant in an action for damages or has had a judgment in such action docketed against him.[2] There was no proof that the questioned transfers made by Jaymont Linen occurred during the pendency of litigation or that Jaymont Linen had any judgment creditors at the time of the transfers or thereafter.

In addition to proof of a conveyance without fair consideration, Debtor and Creditor Law Section § 274 requires proof that the transferor was engaged, or about to engage, in a business for which the property remaining in the transferor's hands after the conveyance amounted to an

---

1. § 273. Conveyances by insolvent.

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

2. § 273–a. Conveyances by defendants.

Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

**410**

unreasonably small capital.[3] There was no such proof in this case.

The intent to incur debts beyond one's ability to pay at the time of a conveyance without fair consideration is the essential element under section 275 of the Debtor and Creditor Law.[4] Best offered no evidence as to Jaymont's ability to pay its debts when it transferred the Daniele Linen assets.

In light of the foregoing, it must be concluded that Best failed to establish a prima facie case against the respondents in this removed case in so far as its complaint is addressed to Best's status as a creditor of Jaymont Linen by reason of the latter's assumption of the debts of Daniele Linen.

### CONCLUSIONS OF LAW

1. The filing of the involuntary petitions against Daniele Linen and Daniele Laundry, followed by the orders for relief and the appointment of a trustee in bankruptcy for the debtors, deprive Best of any standing to sue on behalf of the estate of Daniele Linen to set aside or obtain recovery for the transfers of assets made by the debtors to Jaymont Linen and Jaymont Laundries either on grounds of fraudulent conveyances or violations of the bulk sales laws.

2. In its capacity as a creditor of Jaymont Linen, Best has failed to establish a prima facie case that Jaymont Linen's transfer of assets to Sea Crest and White Plains Coat & Apron violated the applicable New York bulk sales laws.

3. As a creditor of Jaymont Linen, Best has failed to establish a prima facie case that Jaymont Linen's transfer of assets to Sea Crest and White Plains Coat & Apron

violated the fraudulent conveyance laws as expressed in the New York Debtor and Creditor Law.

4. Jaymont Linen's motion to dismiss Best's complaint, following the close of Best's case, is granted.

SUBMIT ORDER on notice.

---

3. § 274. Conveyances by persons in business.
   Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

4. § 275. Conveyances by a person about to incur debts.
   Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.