**DANA MOLDED PRODUCTS, INC., Plaintiff,**

v.

**Richard E. BRODNER, Thomas Brodner, and Kenneth Kysely, Defendants.**

No. 85 C 7196.

United States District Court,
N.D. Illinois, E.D.

Jan. 21, 1986.

Geoffrey G. Gilbert, Elias N. Matsakis, Malcolm H. Brooks, McBride Baker & Coles, Chicago, Ill., for plaintiff.

David Missner, Franklin Schwerin, Robert Handler, Schwartz, Cooper, Kolb & Gaynor, Chartered, Chicago, Ill., for defendant Richard Brodner.

Daniel A. Zazove, Stephen T. Bobo, Towbin & Zazove, Ltd., Chicago, Ill., for defendants Thomas Brodner and Kenneth Kysely.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This action presents the issue whether a judgment creditor of a bankrupt corporation may sue under the Racketeer Influenced and Corrupt Organizations Act, ("RICO"), 18 U.S.C. § 1964(c), for bank-

ruptcy fraud committed against the corporation itself in an attempt to hinder creditors generally. Defendants have filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6) on the ground that no individual RICO claim can lie in such a situation. For the reasons set forth herein, the court agrees and orders that the plaintiff's complaint be dismissed for failure to state a claim upon which relief can be granted.

## Facts

For purposes of this motion, the well-pleaded factual allegations of the plaintiff's complaint are taken as true. Plaintiff Dana Molded Products is an Illinois corporation engaged in the business of manufacturing and selling injection-molded plastic caster wheels. Defendant Richard Brodner, owner of the now bankrupt American Wheel & Engineering Co., ("American Wheel"), is a Cook County resident engaged in the marketing and sale of such caster wheels. Defendant Thomas Brodner, Richard Brodner's son, holds the title of president of Circular Concepts, Inc., an Illinois corporation engaged in the marketing and sale of injection-molded plastic caster wheels. Defendant Kenneth Kysely is a salesman formerly engaged by American Wheel and now employed by Circular Concepts, Inc.

On February 1, 1984, a judgment was entered against American Wheel in the approximate amount of $478,000, of which only $1,500 has been paid. On February 6, 1984, American Wheel filed for protection under Chapter 11 of the United States Bankruptcy Code. On March 4, 1985, American Wheel ceased to operate business and the reorganization proceedings were converted to liquidation proceedings under Chapter 7. At all relevant times during American Wheel's operation as debtor-in-possession, defendant Richard Brodner was president and chief executive officer of American Wheel with an annual salary of $200,000.

In or about April of 1984, Richard Brodner caused Circular Concepts, Inc., to be organized as an Illinois corporation, and thereafter proceeded to transfer all of American Wheel's assets, including its goodwill as a going concern, to Circular Concepts. In furtherance of this plan, Richard Brodner committed the following purported acts of racketeering: he caused the assets of the Chapter 11 estate to be fraudulently transferred to Circular Concepts without consideration; he concealed the assets of American Wheel from the bankruptcy court; he fraudulently represented that his services were necessary for American Wheel's reorganization while secretly depleting the company; and he gave other false testimony before the bankruptcy judge to conceal his wrongdoing.

Defendants Thomas Brodner and Kenneth Kysely are sued as co-conspirators. Thomas Brodner is alleged to have allowed himself, although a full-time college student, to be named president and chief executive officer of Circular Concepts for purposes of disguising his father's involvement. Kysely is alleged to have acted as a salesman for first American Wheel and then Circular Concepts "in a manner designed to facilitate the fraudulent transfer of American Wheel's assets to Circular Concepts."

## Discussion

Defendants have urged several reasons for dismissing plaintiff's complaint. This court will address only two: their argument that plaintiff's claim belongs exclusively to the trustee of American Wheel, and is therefore subject to the automatic stay of § 362(a)(3), and their argument that plaintiff, as a creditor of the directly injured RICO victim, lacks standing to sue. As will be evident from the court's discussion, the two arguments are closely intertwined.

It is fairly well settled that property which a Chapter 11 debtor has fraudulently conveyed in an attempt to hinder creditors is "property of the estate" under 11 U.S.C. § 541(a) and that actions to appropriate that property for the benefit of any one creditor are automatically stayed by the filing of the Chapter 11 petition. *Carlton v. BAWW, Inc.,* 751 F.2d 781, 785 (5th Cir.1985); *In re MortgageAmerica Corp.,*

714 F.2d 1266, 1275 (5th Cir.1983); *Best Manufacturing, Inc. v. White Plains Coat & Apron Co., Inc. (In re Daniele Laundries, Inc.)*, 40 B.R. 404, 407–08 (Bkrtcy.S. D.N.Y.1984). The theory of this rule is that a judgment creditor's standing to avoid a fraudulent transfer succeeds to the trustee in the event of bankruptcy, so that any money collected in such an action will be distributed pro rata to all creditors.

As courts have implicitly if not expressly noted, this rule has especial force in the context of suits against an officer or director of the debtor corporation, since such suits typically charge breaches of fiduciary duties owed to the debtor corporation itself. The trustee's right to recover damages for such breaches is beyond dispute. *Pepper v. Litton*, 308 U.S. 295, 307, 60 S.Ct. 238, 245–46, 84 L.Ed. 281 (1939); *Mitchell Excavators, Inc. by Mitchell v. Mitchell*, 734 F.2d 129, 131 (2d Cir.1984); *MortgageAmerica*, 714 F.2d at 1276; *Fuller v. Plants & Facilities Co., Inc., (In re Plants & Facilities Co., Inc.)*, 441 F.2d 275 (9th Cir.1971); 4 *Collier on Bankruptcy*, ¶ 541.10[8] at 541–67 (15th ed. 1983). As explained in *Hassett v. McColley (In re O.P.M. Leasing Services, Inc.)*, 28 B.R. 740, 759 (Bkrtcy.S.D.N.Y.1983), "officers and directors are fiduciaries to the corporations' stockholders and creditors ... and the right to recover for a breach of these duties passes to the trustee in bankruptcy." Because claims for damages from corporate mismanagement are derivative in nature, those courts addressing the issue have further concluded that such claims are enforceable solely by the trustee, and may not be asserted by any one creditor. *Carlton*, 751 F.2d at 785; *Mitchell*, 734 F.2d at 131; *MortgageAmerica*, 714 F.2d at 1272; *Best Manufacturing*, 40 B.R. at 407–08.

In *In re MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir.1983), much as here, a creditor bank filed a lawsuit against the controlling person of an insolvent corporation. The creditor sought to recover funds for itself based upon three causes of action: a "corporate trust fund" claim, a "denuding the corporation" claim, and the Texas fraudulent conveyance statute. The corporation subsequently filed a petition for relief under Chapter 7 of the Bankruptcy Code. The bankruptcy court stayed the action pursuant to its powers under 11 U.S.C. § 362, the district court affirmed, and the creditor appealed.

In affirming the judgments below, the Fifth Circuit relied on the broad language of § 541(a)(1), the nature of the state court claims asserted by the bank, and the general purposes of the bankruptcy laws, namely "the marshalling of assets and their prorata distribution to creditors." 714 F.2d at 1273. After an extensive analysis determining that the claims properly belonged to the corporation and not the creditor, the court concluded that to allow the bank individual recovery would undermine the fundamental bankruptcy policy of equitable distribution among creditors, and affirmed the previous stay orders.

Unbeknownst to the parties, this court has previously followed *MortgageAmerica* to stay a creditor lawsuit against a debtor corporation's officers for fraud and civil RICO. *Consumers Roofing Co., Inc. v. Priority Construction Co., Inc.*, Slip Op. No. 83 C 6588 (October 25, 1984) (unpublished opinion). The court concluded at that time that an action which properly belongs to all of a Chapter 7 corporation's creditors should be asserted solely by the trustee, and rejected the argument, made here by plaintiff, that section 362 only applies to actions against the debtor. While that latter proposition is true as a general matter, *see, e.g., In re Johns-Manville Corp.*, 26 B.R. 405, 411 (Bkrtcy.S.D.N.Y. 1983), the rationale of the rule must be examined in context. *Johns-Manville*, cited here by plaintiff, concerned whether the Chapter 11 filing of a tort defendant should stay the action against nonbankrupt codefendants faced with joint and several liability. Such a situation, in which the tort plaintiff's recovery from third parties cannot diminish the estate, has little if any applicability to the case where a creditor attempts to appropriate a claim also belonging to the estate itself.

The other arguments put forth by plaintiff, however, were not made to the court in its earlier ruling, and the court therefore will treat the issue as one of first impression. Plaintiff vigorously contends that *MortgageAmerica* is limited in its rationale to suits brought derivatively on behalf of the corporation, and that plaintiff is neither seeking recovery of American Wheel's property nor asserting a claim on American Wheel's behalf. Because plaintiff purports to bring suit on its own behalf for the separate injury which defendants inflicted on it, it argues that it should be allowed to do so.

While this argument has some cogency, the predicate acts of racketeering on which plaintiff bases its claim all involve fraudulent transfers of money from American Wheel, and the injuries plaintiff asserts are indistinguishable from those suffered by American Wheel itself. Indeed, it is only in its capacity as a creditor of American Wheel that plaintiff has been injured at all, and plaintiff further admits in its brief that its claim against American Wheel would be *pro tanto* satisfied by recovery in this action. In short, plaintiff has suffered no "separate" injury from that inflicted on the bankruptcy estate despite the contrary claims in its brief.

It is also important to note that the plaintiff's injury due to the diminution in American Wheel's assets is no different from that suffered by the other Chapter 11 creditors. The claim thus does not belong "specifically and exclusively" to the plaintiff in a way which would justify non-application of the stay. *See MortgageAmerica*, 714 F.2d at 1277 n. 10. *See also Ford Motor Credit Co. v. Mirges*, 473 F.2d 918, 921 (4th Cir.1973) (where an alleged fraud results in loss to corporation and its creditors generally, right of action belongs to corporation and may be maintained only in its name or in the name of its receiver if it is insolvent).

Allowing plaintiff to proceed to judgment against defendants would diminish the pool of their assets on which the trustee could levy, and thus result in the very sort of inequitable distribution the bankruptcy laws are designed to avoid. A judgment in this case would, moreover, arguably decrease the liability of defendants to American Wheel, and would thus interfere with the bankruptcy court's orderly marshalling of assets.[1]

Nonetheless, the court agrees with plaintiff that the applicability of the bankruptcy stay is inseparable from the question of standing. The court in *MortgageAmerica* implicitly assumed that an action accruing to a creditor in its individual capacity against a nonbankrupt party would not be "property of the estate" as that term is defined in the Bankruptcy Code. 714 F.2d at 1268. In finding that the creditor's claims were stayed, the court relied heavily on the facts a) that any recovery in the trust fund or "denuding" claims would be distributed pro-rata to creditors, 714 F.2d at 1271, and b) that the remedy for a fraudulent transfer under Texas law relates entirely to the debtor's fraudulently transferred property and entails no personal liability on the part of those responsible for the transfer. *Id.* at 1272. The court thus described the actions as "in the right of the corporation," 714 F.2d at 1277. The other cases relied on by defendants concern shareholder suits, which are also in the right of the corporation, and therefore impose particular standing requirements. Plaintiff correctly notes that the RICO statute, which provides a remedy to any person "injured in his business or property" by reason of a RICO violation, is not derivative in nature. Whether a RICO action accrues individually to a creditor, however, must be determined not only by looking to the nature of the statutory remedy,

---

1. Plaintiff has also argued that its claim cannot be "property of the estate" under § 541(a)(1) because the alleged predicate acts occurred after the Chapter 11 petition was filed, and therefore do not amount to a "legal or equitable interest[ ] of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Since § 541(a)(7) includes within the bankruptcy estate "[a]ny interest in property that the estate acquires after the commencement of the case," this argument is without consequence.

but also to the nature of the injury for which relief is sought.

Plaintiff may not, simply by casting a fraudulent conveyance as a RICO violation, create standing for itself unless the RICO statute so provides. The court therefore turns to that question. In *Warren v. Manufacturers National Bank of Detroit*, 759 F.2d 542 (6th Cir.1985), the major creditor and sole shareholder of a corporation brought a RICO suit against a bank based on mail and wire fraud committed against the corporation. The district court dismissed the complaint for lack of standing, and the court of appeals affirmed on the ground that the plaintiff's rights were merely derivative and therefore could be asserted only through the corporation itself. In so holding, the court held that the common law limits on standing apply in full force to RICO actions. *Accord, Gallagher v. Canon, U.S.A.*, 588 F.Supp. 108, 110 (N.D.Ill.1984). The *Warren* court did not address whether the plaintiff's status as a creditor of the corporation sufficed to state a RICO claim, however, since the record nowhere reflected that characterization. 759 F.2d at 545.

*Warren* (which the parties have not cited) supports the plaintiff insofar as the court did not blindly equate shareholder and creditor injuries for purposes of RICO standing. To the extent that the court did address the issue, however, it implicitly rejected the idea of creditors bringing suits for frauds committed against their debtors:

> Whether RICO should or should not be interpreted to "federalize" common law fraud is an issue distinct from whether it should be interpreted to materially expand the standing requirement applicable to such claims. Allowing every shareholder, employee and creditor a cause of action for injuries derivative of those suffered directly by a corporation does not just permit a vast amount of litigation to be brought in federal court that previously could only have been brought in state court, but creates a potential avalanche of suits that previously could not have been brought at all.

759 F.2d at 545. The court's holding accords with many cases holding at common law that creditors may not maintain an action against corporate fiduciaries where the creditor is harmed only indirectly, and has sustained an injury in common with other creditors. *See Henderson v. Buchanan, (In re Western World Funding Inc.)* 52 B.R. 743, 773 (Bkrtcy.D.Nev.1985) (citing cases).

■ This conclusion—that injuries inflicted directly against a corporation should not be assertable by the victim's creditors—is consonant with the law of this Circuit. concerning RICO. In *Carter v. Berger*, 777 F.2d 1173 (7th Cir.1985), (Easterbrook, J.), the Seventh Circuit held that taxpayers whose assessments were raised as a result of bribes made to the assessor's office could not assert a claim under RICO against the bribors. The court found that the county was the directly injured party and that to allow indirectly injured parties to sue would expose the defendants to duplicative liabilities so as to increase the congressional penalty of treble damages to sextuple damages. Therefore, the court held that only the directly injured party could recover: "an indirectly injured party should look to the recovery of the directly injured party, not to the wrongdoer, for relief." *Id.* at 1176.

The *Carter* panel also determined that disallowing suits for indirect injuries would further the in terrorem effect of the private remedy under RICO: "concentrating the entire right to recover in the hands of the directly injured party promotes deterrence." 777 F.2d at 1176. The court did note, however, that this latter rationale no longer applies where the RICO victim is a wrongdoer as well, and therefore concluded that "indirectly injured parties could recover under RICO when they show that the directly injured party was under the continued control or influence of the defendant or his henchmen." 777 F.2d at 1176.

■ In the present case, as noted earlier, plaintiff's injuries derive from those suffered by American Wheel, and plaintiff's complaint indicates unambiguously that the

trustee in bankruptcy is not under Brodner's control, but is instead another victim of Brodner's alleged fraud. Thus, the *injury* is derivative in nature although the remedy is not, and the exception outlined in *Carter* for allowing RICO suits based on indirect injuries is absent. The court therefore concludes that the plaintiff lacks standing, particularly where the trustee in bankruptcy has not taken a position on the claim.

In so concluding, the court is mindful that defendants' motives in making this motion are to avoid liability altogether, and not to promote equality as among creditors. However, plaintiff and defendants both have an interest in keeping the fact of this litigation secret from the bankruptcy court: plaintiff would maximize its recovery at the expense of other creditors by so doing and defendants would minimize liability by keeping other creditors in the dark. Denial of the motion would not promote disclosure. By dismissing the action, however, the court puts the burden on plaintiff of moving the bankruptcy trustee to enforce the action for the benefit of all creditors. This course of events would not only serve the bankruptcy policy of equitable distribution, but would also promote the RICO policy, outlined in *Carter,* of requiring indirectly injured parties to look to the directly injured party for compensation. Finally, this procedure would also have the advantage of educating the bankruptcy judge to frauds allegedly committed in his courtroom.

### Conclusion

Accordingly, the plaintiff's complaint is dismissed for lack of standing.

It is so ordered.