**KOMMANDITSELSKAB SUPERTRANS, Plaintiff,**

v.

**O.C.C. SHIPPING, INC., Ocean Contract Carriers International, Inc., Francisco S. Ilagan, Maria–Theresa V. Ilagan, and Victoria V. Florio, Defendants.**

No. 87 Civ. 1320 (SWK).

United States District Court, S.D. New York.

Nov. 6, 1987.

---

Baker & McKenzie by Robert M. Jarvis, New York City, for plaintiff.

Tenzer, Greenblat, Fallon & Kaplan by Allan J. Kirschner, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff Kommanditselskab Supertrans ("Supertrans"), a foreign corporation, brings suit against defendants seeking to satisfy a judgment ordered by Judge Walker of this Court in July, 1986. *See Kommanditselskab Supertrans v. O.C.C. Inc.*, No. 84 Civ. 6877 (JMW) (S.D.N.Y. July 16, 1986) [Available on WESTLAW, DCT database]. Plaintiff premises jurisdiction on admiralty pursuant to 28 U.S.C. § 1333 within the meaning of Federal Rule of Civil Procedure 9(h). Plaintiff claims that defendants Francisco Ilagan and Maria–Theresa Ilagan, who are husband and wife, and Victoria Florio fraudulently transferred assets from Ocean Contract Carriers, Inc. ("OCC"), the judgment debtor in the prior action, to defendants O.C.C. Shipping, Inc. ("OCC Shipping") and Ocean Contract Carriers International, Inc. ("OCC Int'l") in order to avoid paying the judgment imposed by Judge Walker.

The case is presently before this Court on defendants' motion to dismiss the action pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction, or to stay the action pending the outcome of OCC's bankruptcy proceedings in accordance with 11 U.S.C. §§ 362, 544 and 548. Defendants claim first that plaintiff cannot assert admiralty jurisdiction in an action for fraud or for enforcing a judgment, and second that the automatic stay imposed by the Bankruptcy Code operates to bar the present action at least until the conclusion of bankruptcy proceedings. For the reasons stated below, the Court concludes that admiralty jurisdiction exists, but that the action must be stayed pursuant to the provisions of the Bankruptcy Code.

## BACKGROUND

Plaintiff alleges that the Ilagan defendants and defendant Florio formed OCC in December, 1980, to engage in the business of chartering common carriers. Mr. Ilagan held 100 percent of the stock and served as President; his wife served as Vice–President and Ms. Florio served as Treasurer. In January, 1984, OCC and Supertrans entered into a contract under which Supertrans agreed to transport cargo for OCC to the Philippines. OCC breached the contract in February, 1984, for which Judge Walker found OCC to be liable in the amount of $164,820.24 decision of July 16, 1986.

Plaintiff contends that defendants engaged in a carefully planned scheme "to avoid the company's debtors while allowing the principals of the company to continue their activities as before." Complaint at Para. 12. Plaintiff's Memorandum of Law stresses that this scheme was specifically designed to avoid paying any judgment which might result from the breach of contract. In support of this contention, plaintiff describes defendants' creation in 1984 and 1985 of two new companies, defendants OCC Shipping and OCC Int'l, which were organized similarly to OCC. The Ilagan defendants and defendant Florio served as officers of both of the new companies and owned the vast majority of stock in each.[1] Defendants then allegedly shifted all of OCC's assets into the two new companies in late 1985, leaving OCC defunct by April, 1986. After effectively shutting down OCC's operations, plaintiff alleges that the defendants carried on the business of OCC through OCC Shipping and OCC Int'l, using the assets and customers of OCC. In November, 1986, only a few months after Judge Walker found OCC liable, OCC filed a Chapter 7 bankruptcy petition in the United States Bankruptcy

---

1. The three defendants owned 95 percent of the stock of OCC Shipping and 90 percent of the

Court in the Southern District of New York.[2]

## DISCUSSION

### Nature of the Claim

Before this Court can decide the jurisdiction and bankruptcy questions, it must determine what cause of action plaintiff has stated. Plaintiff claims to have asserted a claim for intentional fraud, whereas defendant argues that the claim instead states a cause of action, if at all, for fraudulent conveyance. The distinction is important since, as the analysis below suggests, this Court might not have admiralty jurisdiction if plaintiff is stating a personal claim for intentional fraud against defendants, as opposed to a claim of fraudulent conveyance to avoid an admiralty judgment. Similarly, the automatic stay provisions of the Bankruptcy Code will not operate to bar the suit if plaintiff has stated a claim for intentional fraud, but will operate to stay the action if plaintiff has alleged a fraudulent conveyance claim.

■ A close reading of the complaint suggests that plaintiff has not stated a claim for intentional fraud; instead, to the extent plaintiff has stated a claim at all, it is one for fraudulent conveyance. Plaintiff never alleges that defendants intended to defraud them personally; instead, plaintiff alleges a scheme "to avoid the company's debtors while allowing the principals of the company to continue their activities as before." Complaint at para. 12. The scheme was designed to defraud OCC's creditors generally, and not plaintiff specifically. Thus, plaintiff's claim is in essence that it has suffered damages in not being able to collect on its judgment against OCC because defendants fraudulently transferred

OCC's assets in order to avoid OCC's liabilities to its creditors.

■ Plaintiff's assertions do not state a claim for intentional fraud, the elements of which are:

(1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely on it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury.

*Cumberland Oil Corp. v. Thropp,* 791 F.2d 1037, 1044 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986), *citing Brown v. Lockwood,* 432 App.Div.2d 186, 432 N.Y.S.2d 186, 193 (2d Dep't.1980). Plaintiff alleges that the Ilagan's and Mrs. Florio misrepresented material facts by claiming that OCC had no assets and was a defunct entity. Complaint at para. 21. Plaintiff also alleges that defendants made these misrepresentations with the intent of avoiding the judgment or of avoiding the lawsuit altogether. Plaintiff, however, admits that it did not rely on these misrepresentations: OCC's false advice concerning its lack of assets did not deter or "bluff" plaintiff into dropping its suit in the fall of 1985, Complaint at para. 17, and plaintiff did not succumb to defendants' attempt to avoid judgment claiming OCC was a defunct entity, Complaint at para. 21. This lack of reliance suggests first, that plaintiff is not in essence stating an intentional fraud claim, but instead a fraudulent conveyance claim, and second, if plaintiff were attempting to state an intentional fraud claim, it has failed to do so.[3]

stock of OCC Int'l.

2. The case is now pending before Judge Brozman of the Bankruptcy Court. *In re O.C.C. Inc.,* No. 86–B–12144.

3. The Court looks to state law in this and the following discussion for a number of reasons. First, the Court must look to state law in deciding whether to exercise its admiralty jurisdiction since plaintiff is only stating an equitable claim subsidiary to the court's admiralty juris-

diction, and not a maritime claim. Second, absent contrary language in the Bankruptcy Code, state law defines what is "property" of the estate. *See Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979). Third, 11 U.S.C. § 544(b) gives trustees the power to avoid transfers which are voidable under state law. *See In re Milam,* 37 B.R. 865, 867 (Bktrcy.N.D.Ga.1984). New York law applies since the debtor estate is in this state. *See Butner, supra.*

New York's Fraudulent Conveyance Act, N.Y. Debtor and Creditor Law §§ 270 *et seq.* (McKinney's 1945), which mirrors the Uniform Fraudulent Conveyance Act, provides that:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

*Id.* at § 273. Plaintiff has alleged that OCC made conveyances [4] which rendered it insolvent.[5] Plaintiff fails to allege how in what manner defendants transferred the assets from OCC to the new corporations, and thus it is unclear on the pleadings whether OCC received adequate consideration for the transferred assets. Failure to allege lack of fair consideration would defeat a claim brought under the Fraudulent Conveyance Act. *See Matter of Daniele Laundries, Inc.,* 40 B.R. 404, 409–10 (Bkrtcy.S.D.N.Y.1984). Plaintiff's complaint as a whole, however, unmistakingly suggest that OCC gave its assets to OCC Shipping and OCC Int'l for no consideration, since plaintiff alleges that OCC was left defunct. To the extent plaintiff has stated a claim, it is one for fraudulent conveyance under New York law.[6] The facts of this case are thus distinguished from those in *Cumberland Oil Corp., supra.*

Plaintiff also might be able to state a claim under another section of the Fraudulent Conveyance Act, entitled "Conveyances by defendants", which reads:

Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant, if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

*Id.* at § 273–a. Plaintiff has alleged generally that OCC, through the Ilagans and Florio, conveyed its assets to OCC Shipping and OCC Int'l during the pendency of the lawsuit and after the docketing of judgment. Defendant has allegedly not satisfied the judgment in any way. With the reservations noted above concerning the fair consideration issue, plaintiff has stated a claim for fraudulent conveyance.

### Admiralty Jurisdiction

Plaintiff premises subject-matter jurisdiction on the Court's admiralty jurisdiction granted by 28 U.S.C. § 1333 on the grounds that the District Courts have admiralty jurisdiction to enforce a judgment rendered pursuant to the Court's admiralty jurisdiction. Defendants argue that admiralty jurisdiction does not exist unless the wrong to be redressed "bear[s] a significant relationship to traditional maritime activity." *Executive Jet Aviation v. City of Cleveland,* 409 U.S. 249, 261, 93 S.Ct. 493, 501, 34 L.Ed.2d 454 (1972).

Defendants are correct that, as a general rule, "federal admiralty jurisdiction is strictly limited to claims traditionally raised in admiralty." *Atlanta Shipping Corp., Inc. v. Chemical Bank,* 818 F.2d 240, 248 (2d Cir.1987). As is often the case, this rule has exceptions, including an exception which extends admiralty jurisdiction to encompass equitable claims, such as fraudulent transfer of assets, in certain circumstances. *Id.*

---

4. The statute defines "conveyance" as "every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance." Debtor and Creditor Law § 270 (McKinney's 1945).

5. Insolvency is defined as "when the present fair salable value of [the person's] assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." *Id.* at § 271.

6. Plaintiff has not cited the Fraudulent Conveyance Act nor has it argued that it is suing for recovery of a fraudulent conveyance. Instead, plaintiff maintains it is suing for to recover on a judgment and for fraud. Therefore, the above analysis should not be understood to mean that the plaintiff's complaint as it now stands could withstand a Rule 12(b)(6) motion.

■ An admiralty court has jurisdiction to enforce its own judgments. *Lee v. Thompson*, 15 F.Cas. 223 (C.C.D.La.1878) (No. 8,202); *see Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950) (approving the result in *Lee v. Thompson*). The *Swift* Court extended this doctrine by holding that an admiralty court can protect its jurisdiction by issuing an order of attachment to prevent fraudulent transfers. Justice Frankfurter, speaking for the Court, explained that "the basis of admiralty's power is to protect its jurisdiction from being thwarted by a fraudulent transfer, and that applies equally whether it is concerned with executing its judgment or authorizing an attachment to secure an independent maritime claim." *Swift, supra*, 339 U.S. at 694–95, 70 S.Ct. at 867–68.

■ In *Atlanta Shipping, supra*, a case recently decided by the Second Circuit, the plaintiff argued that the court could exercise admiralty jurisdiction in order to set aside a fraudulent transfer designed to frustrate a maritime debt even though the court was not exercising admiralty jurisdiction over traditional admiralty claims at the same time. The Court flatly rejected this proposition, noting that "[a]n admiralty plaintiff must have invoked the admiralty court's jurisdiction over litigation properly before it in order to permit the court to consider equitable claims subsidiary to that litigation." *Atlanta Shipping, supra*, 818 F.2d at 248.

In that case, the plaintiff, Atlanta Shipping Corp., Inc. ("Atlanta Shipping"), sued Chemical Bank, alleging that it had violated numerous laws in receiving payments from International Modular Housing, Inc. ("IMH"), a debtor to both Chemical Bank and Atlanta Shipping. IMH, organized to sell modular houses to Saudi Arabia, borrowed approximately $6 million from Chemical Bank to finance its operations. IMH entered into a shipping contract with Atlanta under which Atlanta agreed to carry 560 mobile homes from the United States to Saudi Arabia in four trips for a price of $1.54 million per voyage. After

IMH defaulted on a number of payments, the parties entered into a credit agreement whereby IMH gave Atlanta Shipping a promissory note in exchange for a security interest in the modular houses. This Court eventually confirmed arbitration awards in favor of Atlanta Shipping totalling nearly $4 million. Atlanta Shipping alleged that IMH had fraudulently transferred assets to Chemical Bank and sought to invoke the Court's admiralty jurisdiction in order to satisfy the arbitration award. Plaintiff argued that the presence of a related maritime dispute conferred admiralty jurisdiction over its independent action to assert equitable claims against Chemical Bank. *Id.*

The District Court decided that, absent allegations that defendant is trying to avoid or frustrate the court's admiralty jurisdiction, a court should refrain from exercising such jurisdiction when traditional maritime claims are not involved. *Atlanta Shipping Corp., Inc. v. Chemical bank*, 631 F.Supp. 335, 341 (S.D.N.Y.1986), *aff'd* 818 F.2d 240 (2d Cir.1987). Atlanta Shipping could "not allege that IMH's transfers to Chemical Bank were an attempt to avoid an admiralty judgment" since Atlanta Shipping had never received a judgment in an admiralty court. *Id.* Plaintiffs did not allege that "that IMH's transfers to Chemical were a calculated attempt to avoid our admiralty jurisdiction ... Nor does the plaintiff allege that Chemical is the alter ego of IMH." *Id.* Consequently, the court found no basis for admiralty jurisdiction.

In the case before this Court, Supertrans alleges that defendants engaged in a "carefully planned" scheme to avoid the debtors of OCC while continuing to operate OCC's business. Part of that plan included placing OCC into bankruptcy four months after this Court, sitting in admiralty, issued a judgment holding OCC liable. Plaintiff thus alleges that the defendants have attempted to thwart this Court's admiralty jurisdiction. Plaintiff also suggests that OCC Shipping and OCC Int'l are merely alter egos of OCC, and "the jurisdiction of a court of admiralty to determine [whether a defendant is the] alter ego [of a judgment

debtor] is 'undoubted'." *Id., citing North Eastern Shipping Corp. v. Gov't of Pakistan*, 1974 Am.Mar.Cas. 900, 904 (S.D.N.Y.) (Magistrate's Report), *aff'd* 1974 Am.Mar. Cas. 908 (S.D.N.Y.1974). Supertrans thus invokes this Court's admiralty jurisdiction in an effort to enforce the prior admiralty judgment.

Defendants contend, however, that admiralty jurisdiction not available in this case since the allegedly fraudulent transfers to OCC Shipping and OCC Int'l occurred prior to the entry of judgment. While it is true that plaintiff acknowledges that the transfers were completed by April, 1986, a few months before the entry of judgment, plaintiff also suggests, without specifically so alleging, that the transfers were made in the expectation of an adverse judgment. Complaint at Para. 21. Furthermore, plaintiff suggests that the scheme to siphon assets out of ICC Inc. culminated in the bankruptcy filing, which occurred a few months after the entry of judgment. Complaint at Para. 11.

The Second Circuit acknowledged that "admiralty jurisdiction is available in some circumstances to challenge transfers that occurred prior to judgment ..." *Atlanta Shipping, supra*, 818 F.2d at 248. This Court therefore exercises its admiralty jurisdiction since plaintiff seeks to enforce an admiralty judgment, argues that corporate defendants are the alter ego of the judgment debtor, and suggests an ongoing scheme to transfer assets fraudulently in an attempt to defraud creditors and frustrate this Court's admiralty jurisdiction. Defendants' motion to dismiss for lack of subject-matter jurisdiction is thus denied.

*Automatic Stay under Bankruptcy Code*

Defendants also move in the alternative to stay this action, pursuant to 11 U.S.C. § 362(a) (Bankruptcy Code), on the grounds that only the bankruptcy trustee has the authority to distribute the bankrupt estate's assets. Plaintiff, relying on *Cumberland Oil Corp. v. Thropp*, 791 F.2d

1037 (2d Cir.1986), claims that it does not seek to recover assets of the debtor estate, but instead has asserted an intentional fraud claim against defendants personally.[7]

The Bankruptcy Code provides for an automatic stay, applicable to all entities, to protect the property of the debtor estate. 11 U.S.C. § 362(a). If the stay applies, the district court's power to adjudicate the case is suspended pending the outcome of the bankruptcy proceedings. *See Int'l Distribution Centers, Inc. v. Walsh*, 62 B.R. 723, 728 (Bkrtcy.S.D.N.Y. 1986). The automatic stay operates to protect debtors by giving them temporary relief from creditors and protects creditors as a whole by avoiding a first-come first-served race to the debtor's assets. *In re MortgageAmerica*, 714 F.2d 1266, 1274 (5th Cir.1983). This automatic stay applies to the debtor estate which is automatically created when an action is filed under 11 U.S.C. § 303 and includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

The stay prevents individual creditors from suing to enforce a right of action belonging to the corporation when that corporation is in bankruptcy. *Cumberland Oil Corp., supra*, 794 F.2d at 1042 (citations omitted). On the other hand, the stay does not apply to suits brought to recover rights of action which belong to the plaintiff-creditor. *Id.* Therefore, the important question for the Court to answer is whether the right to recover on the stated cause of action belongs in the first instance to the creditor or to the debtor estate. If plaintiff is suing to recover on a right of action belonging to the debtor corporation, the automatic stay would operate, whereas if plaintiff is suing to recover on a right of action belonging to the plaintiff personally, the stay would not operate. *See id.; Cf. Mitchell Excavators, Inc. v. Mitchell*, 734 F.2d 129 (2d Cir.1984) (a shareholder's derivative action is property of the bankrupt-

---

**7.** Defendants correctly point out that plaintiff's argument that it is not seeking to enforce a judgment or avoid a fraudulent transfer potentially jeopardizes the admiralty jurisdiction of this Court. This problem is avoided since the Court concludes that plaintiff is in actuality asserting a claim to enforce a judgment and to avoid a fraudulent transfer.

cy estate and directly prosecutable by the trustee in bankruptcy).

The *Cumberland Oil* decision demonstrates that the automatic stay does not operate in all circumstances. In that case, Cumberland entered into a contract with Benchmark Oil for the drilling of certain oil wells. Before signing the agreement, Cumberland's president, lawyer and others met with Gregory Thropp, the president and sole shareholder of Benchmark, in order to receive financial information concerning Benchmark. Instead of releasing financial data, Thropp assured plaintiff that the corporation could do the job and was in good financial condition. Despite these representations, Benchmark soon found its way into bankruptcy court. Cumberland alleged that Gregory Thropp and his father James Thropp conspired to deplete Benchmark of its assets and offered evidence that the Thropps had Benchmark assign its assets and royalty rights to the Thropps personally, leaving the corporation without any assets.

The Second Circuit in *Cumberland Oil* concluded that the bankruptcy stay did not bar plaintiff's suit against the Thropps because "Cumberland has not claimed a right on its own or Benchmark's behalf to recover misappropriated assets [i.e., assets properly belonging to the debtor estate]. Instead, it alleges that it suffered damages because of Gregory Thropp's intentional fraud [i.e., a personal claim against defendants]." *Id.* Since plaintiff asserted a personal right of action against Thropp, as opposed to a right of action belonging to the debtor estate, the bankruptcy trustee did not have standing to vindicate the right and the automatic stay did not take effect.

In the action before this Court, plaintiff states a cause of action, if at all, for fraudulent conveyance, not intentional fraud.

The only remaining question, therefore, is whether plaintiff can sue defendants directly to recover the alleged fraudulent conveyance or whether the automatic stay requires plaintiff to stand in line with the rest of OCC's creditors. If the transferred property remains in the estate of the debtor, then the bankruptcy trustee will have the exclusive authority to seek recovery. 11 U.S.C. § 362(a); *see MortgageAmerica*, 714 F.2d at 1277; *Matter of Milam, supra*, 37 B.R. at 867 (trustee has exclusive power to avoid fraudulent transfers pursuant § 544(b)).[8]

As the *MortgageAmerica, supra*, court noted, the "basic principle of a fraudulent transfers act ... is that '[a]s to the creditors, the property continues in the debtor, and it or its proceeds are liable to the creditors' demands.'" 714 F.2d at 1266 (citation omitted). Similarly, the right to sue directors and officers of a bankrupt corporation for violating fraudulent conveyance law passes to the trustee in bankruptcy. *In re O.P.M. Leasing Services*, 28 B.R. 740, 759 (Bkrtcy.S.D.N.Y.1983); *see also In re Central Heating & Air Conditioning, Inc.*, 64 B.R. 733, 737 (N.D. Ohio 1986) (§ 362(a) stays a collateral action against third parties by a creditor to recover a fraudulent conveyance). The assets fraudulently conveyed by OCC to defendants remain in the bankrupt estate, and is thus subject to the strong arm powers of the trustee. *See Cumberland Oil Corp., supra*, 791 F.2d at 1042 (the trustee's strong arm power would exist to recover corporate assets for the benefit of all creditors under fraudulent conveyance act).

The automatic stay applies in this case for two reasons. Specifically, the statute stays "the enforcement, against the debtor or against property of the estate, of a

---

8. Two specific provisions of the Code give trustees authority to avoid fraudulent transfers in situations such as the one involved in this case. First, § 544(b) gives the trustee the power to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable [state] law ..." Second, § 548(a)(1) gives the trustee the power to "avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one-year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; ..."

judgment obtained before the commencement of the case under this title;" *id.* at § 362(a)(3), and the statute stays "any act to obtain possession of property of the estate or to exercise control over property of the estate;" *id.* at § 362(a)(3). Here, the plaintiff is attempting to enforce its judgment against OCC, the debtor, and is also attempting to obtain assets which belong to the debtor estate. As one court noted,

> [n]o matter how [plaintiff] attempts to frame its action against third parties, it cannot disguise the fact that it is attrrmpting to push its way to the front of the line of creditors, rather than seeking redress for a unique injury.

*In re Central Heating & Air, supra,* 64 B.R. at 737. Consequently, defendants' motion to stay this action pending the conclusion of the bankruptcy proceedings is granted.

SO ORDERED.