BANKERS TRUST COMPANY, Plaintiff,

v.

Walter FELDESMAN, Daniel Rhoades, Herman Soifer, Milton Braten, Brookfield Clothes, Inc., Brookfield Industries, Inc., Bennington Court Ltd., Braxton Ltd., Aura By Laurie, Ltd., Erwin Commercial Corp., Michael B. Marks, Inc., Timely Textiles, Inc., Todd Equipment Leasing Co., Inc., and "John Does Nos. 1–50," Defendants.

No. 82 Civ. 5590 (WCC).

United States District Court, S.D. New York.

Dec. 22, 1987.

**498**

. Moses & Singer, New York City, for plaintiff; David Rabinowitz, David B. Picker, Michael S. Zachary, of counsel.

Rosenman Colin Freund Lewis & Cohen, New York City, for defendant Herman Soifer; Joel W. Sternman, Eugene A. Gaer, Dorothy Heyl, of counsel.

Rhoades & Rhoades, P.C., Brewster, N.Y., for defendants Daniel Rhoades and Milton Braten; Daniel Rhoades, Eric A. Klein, of counsel.

### OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

This case is before the Court on defendants' motion pursuant to Rule 3(j) of the Local Civil Rules for an order granting reargument, and upon reargument, for dismissal of the complaint pursuant to Rules 9(b) and 12(b)(6), Fed.R.Civ.P. In the underlying motion defendants[1] moved for judgment on the pleadings under rule 12(c), Fed.R.Civ.P. Defendants advanced three arguments in support of the motion: (1) plaintiff Bankers Trust Co. ("Bankers Trust") did not adequately allege a pattern of racketeering activity, (2) Bankers lacks standing to assert a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and (3) Bankers' RICO claim was barred by the statute of limitations. On September 3, 1986 the Court ruled that plaintiff had adequately alleged the commission of a pattern of racketeering activity on the part of defendants Daniel Rhoades and Milton Braten, and the motion was denied as to them, 648 F.Supp. 17. The motion was granted as to the corporate defendants and they were dismissed from the case.[2] As to defendant Herman Soifer, the Court found a sufficient allegation of a pattern of racketeering activity, but dismissed the claim on the ground that it was barred by the statute of limitations. The Court did not dismiss the claim that Soifer conspired to violate RICO, finding that the action was timely in this regard. Plaintiff was granted leave to amend the complaint to plead a timely claim of racketeering activity against Soifer, and to plead a more specific RICO claim against the corporate defendants. Plaintiff repled with respect to Soifer, but did not replead with respect to the corporate defendants. For the reasons set forth below, defendants' motion is granted and the complaint is dismissed.

### I. *Facts*

█ In deciding both the motion to dismiss under Rule 12(b)(6) and the reargument of the motion for judgment on the

---

1. Defendant Walter Feldesman was not a party to the motion, plaintiff having dismissed him from the case by stipulation dated March 4, 1983.

2. Defendant Brookfield Clothes, Inc. ("Brookfield Clothes") did not join in the motion for judgment on the pleadings. Consequently, the complaint was not dismissed as to Brookfield Clothes. Walter Feldesman and the corporate defendants have all been previously dismissed from this case. Accordingly, collective references to defendants refer only to Daniel Rhoades, Herman Soifer and Milton Braten.

pleadings under Rule 12(c), the allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972) (Rule 12(b)(6)); *George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir.1977) (Rule 12(c)). Bankers has alleged that the defendants engaged in various acts of bankruptcy fraud and bribery to prevent Bankers from recovering a debt owed by Braten Apparel Corporation ("BAC"), a corporation which the defendants controlled. BAC's debt to Bankers, as of the date of this complaint, exceeds $4,000,000. At all relevant times BAC has been in the business of manufacturing, importing and selling goods in interstate commerce, resulting in net revenues in excess of $50,000,000 per year.

In August 1974, BAC owed substantial debts to Bankers and others, and had recently sustained severe losses. In an effort to avoid BAC's liability on its debts, Braten and Soifer, corporate officers of BAC, agreed to conceal BAC's recent acquisition of Brookfield Clothes, Inc. ("Brookfield Clothes") and to seek a discharge of its debts under Chapter XI of the Bankruptcy Reform Act of 1978.

To carry out this plan, Braten and Soifer executed a sham document hereinafter described as the shareholders' agreement. Pursuant to the shareholders' agreement BAC or Braten was required to furnish Brookfield Clothes with a $250,000 loan by a specified date, in default of which BAC's stock in Brookfield Clothes would be transferred to Soifer. Soifer and Braten, however, never intended that the $250,000 loan be furnished, and intended that BAC's creditors, upon being shown the shareholders' agreement and being told that the condition had not been met, would believe that BAC no longer had any interest in Brookfield Clothes. Braten and Soifer agreed that Soifer would hold Brookfield Clothes in a secret trust during the pendency of BAC's Chapter XI proceedings, and would return it to BAC after BAC had achieved the elimination or diminution of its debts through a confirmed plan of arrangement under Chapter XI. Braten and Rhodes also entered into a written agreement under which Rhoades, as attorney for Soifer, held stock in BAC to secure Braten's commitments to Soifer.

In furtherance of the scheme, Walter Feldesman, an attorney claiming to represent Soifer, misrepresented the validity of the shareholders' agreement to Bankers and to BAC's other creditors, and caused the transfer to Soifer of the Brookfield Clothes stock. Thereafter, on September 5, 1974, BAC filed a petition in Chapter XI before the United States District Court for the Southern District of New York, omitting BAC's ownership of the stock of Brookfield Clothes and omitting also the transfer of the stock to Soifer.

The defendants did not reveal the existence of the secret trust to Bankers, and between August 27, 1974 and March 9, 1976 they represented to Bankers and to the Bankruptcy Court that Braten did not furnish the $250,000 loan required by the shareholders' agreement. Consequently, Soifer appeared to own BAC's stock in Brookfield Clothes.

Bankers accepted a plan of arrangement in reliance on these omissions and misrepresentations, under which Bankers would receive only 17.5% of its allowed claim. Bankers' acceptance of the plan was necessary to obtain the assent of the majority of creditors, in terms of dollars owed, and therefore necessary to confirmation of the plan.

On March 12, 1976, the Bankruptcy Court issued an order confirming BAC's plan of arrangement. Consequently, BAC was relieved of more than $4.3 million in debts. At that time Brookfield Clothes had or anticipated sales of approximately $18 million per year, and net income in excess of $1.4 million per year. The stock of Brookfield Clothes was an asset of BAC worth more than $10 million. Had Bankers known that BAC owned Brookfield Clothes, Bankers would not have accepted the plan of arrangement. Likewise, if Bankers had discovered BAC's ownership of Brookfield Clothes between Bankers' acceptance of the plan and the court's confirmation order,

then Bankers would have revoked its acceptance of the plan.

In August 1976 Soifer returned the Brookfield Clothes stock to BAC through a complicated series of transactions. Braten then transferred 45% of BAC's stock to Soifer in October 1976, in exchange for which Soifer gave Braten $25,000 in cash and a $450,000 note in July 1977. Braten then assigned the note to Rhoades.

Rhoades, acting on behalf of Soifer and together with Braten, commenced a series of lawsuits against Bankers in New York. These suits were intended to hinder and delay Bankers from collecting BAC's debt. In addition, in August 1977, BAC, by a South Carolina law firm to which Rhoades was counsel, instituted an action for damages against Bankers in South Carolina. This same firm was also representing BAC in a related South Carolina action in which BAC asserted claims to an escrow account in which Bankers had an interest. William H. Ballenger was the presiding judge in both South Carolina actions.

In late 1978 and early 1979, Rhoades, through a South Carolina corporation which he formed and which Soifer and Braten owned, acquired or assumed a mortgage on which Judge Ballenger was personally obligated, and paid the Judge's debt as installments became due. Rhoades took these actions on behalf of himself, Braten and Soifer with the intention of thereby influencing the actions of Judge Ballenger in the litigation pending before him. As a result, Judge Ballenger rendered two decisions which were favorable to BAC: on January 18, 1979 Judge Ballenger appointed a special referee who was a former partner in the law firm representing BAC; and on November 9, 1978, Judge Ballenger denied Bankers' motion to dismiss the action for damages. These decisions caused Bankers to expend over $100,000 in legal fees.

In September 1976, Bankers commenced a proceeding to revoke BAC's confirmation of its Chapter XI arrangement as having been procured by fraud. This proceeding did not conclude until the bankruptcy court rendered its opinion on June 25, 1982, which held that defendants had procured the confirmation of BAC's plan of arrangement by fraud. During the pendency of that proceeding the defendants engaged in numerous acts which concealed and depleted the assets of BAC and Brookfield Clothes. On June 30, 1982, the bankruptcy court revoked the confirmation of BAC's plan of arrangement and reinstated the Chapter XI proceeding.

## II. *Discussion*

On reargument defendants renew their contention that Bankers, as an individual creditor of BAC's estate in bankruptcy, lacks standing to assert a claim for damages under RICO. In support of the previous motion, defendants relied on *Rand v. Anaconda–Ericsson, Inc.*, 794 F.2d 843 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986), and *Loeb v. Eastman Kodak Co.*, 183 F. 704 (3d Cir. 1910), in which creditors and shareholders were barred from suing to redress injuries to a corporation. In denying defendants' motion, the Court distinguished those cases. The Court noted that Bankers was not suing to redress injuries to BAC, but rather to redress injuries Bankers suffered in its own right. Indeed, as alleged in Bankers' original complaint, BAC suffered no injury since defendants' actions ultimately enhanced BAC's assets. In addition, the Court concluded that the alleged bribery of Judge Ballenger, which caused Bankers to expend more than $100,000 in legal fees, resulted in a distinct injury to Bankers apart from any injury to BAC and its other creditors.

In their present motion, defendants argue that even though Bankers is not suing derivatively, its claimed injury is no different from that of other creditors, and therefore its cause of action belongs to the estate. Defendants rely on *Dana Molded Products, Inc. v. Brodner*, 58 B.R. 576 (N.D.Ill.1986).

The plaintiff in *Dana* was a judgment creditor of the American Wheel and Engineering Co. ("American Wheel"). The complaint alleged that during American Wheel's Chapter XI reorganization, the president of American Wheel transferred

all the corporate assets without consideration to a new corporation of which his son was president. The judgment creditor then brought a RICO action alleging bankruptcy fraud as a predicate act. Defendant moved to dismiss arguing that plaintiff, as a creditor of the bankrupt corporation, suffered only indirect injury as compared to the direct injury of the corporation, and therefore lacked standing to sue under RICO. Plaintiff responded that it had standing because it was asserting a claim on its own behalf rather than a claim derived from the corporation. The court rejected this argument stating,

> the predicate acts of racketeering on which plaintiff bases its claim all involve fraudulent transfers of money from American Wheel, and the injuries plaintiff asserts are indistinguishable from those suffered by American Wheel itself. Indeed, it is only in its capacity as a creditor of American Wheel that plaintiff has been injured at all.... In short, plaintiff has suffered no 'separate' injury from that inflicted on the bankruptcy estate....

58 B.R. at 579.

■ The instant case is distinguishable from *Dana* as well. In *Dana*, the predicate acts upon which the plaintiff relied *all* involved fraudulent transfers of the bankrupt corporation's assets. In the case at bar, however, Bankers alleges it was injured as a result of the bribery of Judge Ballenger. Bankers claims to have incurred legal fees in excess of $100,000 defending the actions before Judge Ballenger. These legal fees constitute an injury that is distinct from the injury to BAC and to the other creditors, and which do not involve fraudulent transfers of BAC's assets. Therefore, it is clear that Bankers has standing insofar as it was injured by the alleged bribery of Judge Ballenger.

Bankers' other RICO injuries, however, are predicated on acts of bankruptcy fraud. *Dana* would deny recovery for these injuries. Like the plaintiff in *Dana*, Bankers claims injury as the result of defendants' scheme to conceal and misappropriate corporate assets. In this Court's previous decision, the Court held that since defendants' misdeeds had enhanced BAC's assets, Bankers was not suing derivatively to redress injuries to BAC. Bankers' third amended complaint, however, no longer alleges acts that enhanced BAC's assets. Instead, it alleges numerous acts by which defendants depleted BAC's assets. *See* Third Amd. Comp't ¶¶ 42–52. Consequently, the issue for decision on defendants' motion to dismiss the third amended complaint is whether a creditor may bring a civil RICO action against the officers of a bankrupt corporation for injury sustained as a result of actions which depleted the corporation's assets. The determination of this issue requires the resolution of an apparent conflict between two statutory provisions—the Bankruptcy Reform Act and RICO.

When a debtor files a petition for relief under the Bankruptcy Reform Act, all entities are automatically stayed from "any act to obtain possession of property of the estate or of property from the estate." 11 U.S.C. § 362(a)(3). Under § 541 of the Bankruptcy Code the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). These two provisions have been interpreted to bar creditors from suing to enforce the corporation's right to misappropriated corporate assets. *See Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1042 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986); *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1273–75 (5th Cir.1983). This furthers the fundamental bankruptcy policy of equitable distribution among creditors. *Id.* Without these provisions an equitable distribution would be impossible since whoever sued first would obtain payments of their claims in preference to and to the detriment of other creditors. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 340, *reprinted in* U.S.Code Cong. & Ad.News 1978 pp. 5787, 5963, 6296–97.

RICO, on the other hand, provides that any person who has been injured in his business or property by a pattern of racketeering activity may recover treble damages. Congress intended that RICO would

afford a private remedy for persons harmed by the criminal exploitation of the bankruptcy laws. *See Criminal Laws and Procedures: Hearing on § 2187, 2188, 2189, 2190 & 2578 Before Subcommittee on the Judiciary*, 89th Cong. 2d Sess. 204 (1966). Accordingly, RICO provides that acts of bankruptcy fraud can form the basis of a pattern of racketeering activity. Certainly, a creditor is injured in his business or property when, as alleged in this case, the officers of a bankrupt corporation conceal and misappropriate corporate assets through bankruptcy fraud and other racketeering activity. Thus, RICO apparently permits recovery in situations which would violate the automatic stay and frustrate the equitable distribution of the estate.

■ When two statutes appear to conflict, every attempt should be made to interpret them so that each is given effect. The Court can achieve this by applying common law standing principles to RICO. This was the approach of the court in *Dana*, 58 B.R. at 580, and in numerous other cases throughout the federal courts. *See, e.g., Rand v. Anaconda–Ericsson, Inc.*, 794 F.2d 843 (2d Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986); *Warren v. Manufacturers National Bank*, 759 F.2d 542 (6th Cir.1985); *Carter v. Berger*, 777 F.2d 1173 (7th Cir.1985); *Nordberg v. Lord, Day & Lord*, 107 F.R.D. 692 (S.D.N.Y.1985).

■ *Dana* relied on the Seventh Circuit's opinion in *Carter*. There, taxpayers whose assessments were raised as a result of bribes made to the assessor's office sued the bribers under RICO. Judge Easterbrook, writing for a unanimous panel, reviewed a broad spectrum of cases and found that as a general rule the indirectly injured party may not sue. 777 F.2d at 1175. The court concluded that this principle should apply in RICO cases as well. *Id.* The court in *Dana* agreed, and held that a corporation's creditors could not assert a RICO claim based on injuries inflicted directly against the corporation. 58 B.R. at 580.

Bankers argues that *Dana* is not controlling because its claims in the instant case are for a pattern of actions and injuries that are unique to it and unrelated to any bankruptcy matter. Plaintiff directs the Court to *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037 (2d Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 436, 93 L.Ed. 2d 385 (1986), in which the Second Circuit held that a creditor's fraud claim against the officer of a bankrupt corporation is not property of the estate.

In *Cumberland*, as here, the plaintiff alleged injury arising out of a fraud in which the defendants misrepresented the corporation's finances and then stripped the debtor corporation of its assets. Although mindful of the bankruptcy policy of equitable distribution of assets, the court concluded that it was inapplicable in the case before it. 791 F.2d at 1042. The court distinguished an action for fraud, which is a direct action, from a shareholder's derivative action or an action under the New York fraudulent conveyance statute, in which a third party sues to enforce the rights of the corporation. *See id.* at 1041–43. As plaintiffs have argued in the instant case, RICO, like an action for fraud, is a direct action. Therefore, they assert that they have standing under *Cumberland* to state a claim based on the misappropriation of BAC's assets.

*Cumberland*, however, is distinguishable on its facts. In *Cumberland* every creditor who had filed a claim with the bankruptcy court received full payment on their claims prior to the plaintiff's suit. 791 F.2d at 1040. In addition, the bankruptcy trustee had already vindicated the corporation's right to recover misappropriated corporate assets by suing the corporate officers. *Id.* at 1042. Therefore, plaintiff's recovery did not threaten to disrupt the equitable distribution of the corporation's assets. Here, by contrast, the creditors have not received full payment on their claims, nor has BAC sued the corporate officers under a misappropriation theory. In fact, the bankruptcy court has revoked BAC's plan of arrangement, and has yet to authorize a new distribution. *Cumberland*, therefore, is not controlling.

This Court finds *Dana* persuasive. Equitable distribution, the fundamental principle of bankruptcy, would be all but impossible if a creditor could employ RICO to recover misappropriated assets from the bankrupt's corporate officers during the pendency of a Chapter XI reorganization. Therefore, Bankers does not have standing to sue for any injury attributable to the depletion of BAC's corporate assets.

Plaintiff argues that it is entitled to sue under RICO because BAC is under the continuing control of the defendants. Plaintiff points to *Carter,* in which the Seventh Circuit stated in *dictum* that the injured party may have standing to sue when the directly injured victim is under the continuing control of the defendant. 777 F.2d at 1176. Plaintiff correctly notes that this is the case here. The bankruptcy court has not appointed a trustee to manage BAC's affairs during the Chapter XI proceedings: BAC is a debtor in possession, and its daily affairs are still managed by its corporate officers—defendants Soifer, Braten and Rhoades. Nevertheless, BAC's reorganization is still pending before the bankruptcy court. Consequently, Bankers can move the bankruptcy court to appoint a trustee. This would enable the trustee to sue to recover the misappropriated assets on behalf of BAC and all of BAC's creditors, thereby ensuring an equitable distribution. If the trustee fails to bring such an action, then Bankers could treat the claim as abandoned and could bring an action on its own behalf without threatening the principles underlying the Bankruptcy Code. *See Mitchell Excavators, Inc. v. Mitchell,* 734 F.2d 129, 131 (2d Cir.1984). As long as the bankruptcy case is open and Bankers is able to recover on its claim through the process of equitable distribution, however, a suit under RICO against BAC's corporate officers is inappropriate. Therefore, even though BAC is currently under the control of the defendants there is no reason to allow Bankers to sue for the recovery of BAC's misappropriated assets.

Plaintiff argues that this result is contrary to Congress's intention that RICO provide a private remedy for persons harmed by the criminal exploitation of the bankruptcy laws. The result in this case, however, is consistent with Congress's intent. Bankers may still assert acts of bankruptcy fraud in support of its action under RICO, and Bankers has standing to assert a claim for those damages resulting from defendants' bribery of Judge Ballenger. Thus, Bankers may receive compensation for the harm it suffered as a direct result of defendants' bankruptcy fraud. Although the recovery is not as extensive as would be the case if Bankers were entitled to damages for the misappropriation of BAC's assets, this limitation is necessary to harmonize RICO with the Bankruptcy Code.

■ Defendants' motion for reargument also seeks reconsideration of the Court's ruling on the statute of limitations. In ruling on the original motion for judgment on the pleadings the Court held that a three-year statute of limitations would apply to civil RICO actions in New York. The Court also held that a RICO claim accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury from the last predicate act on which he relies. The parties have not challenged these rulings on the motion for reargument. Applying these principles the Court concluded that the substantive RICO claim against Soifer accrued in September 1976, when Bankers discovered the first bankruptcy fraud and commenced a proceeding to set aside the confirmation of BAC's plan. Since Bankers waited until August of 1982 to commence this action, the three-year statute of limitations had long since expired. As to Braten and Rhoades, however, the original complaint alleged that they had taken actions to conceal BAC's assets within the limitations period. Thus the action was ruled timely as to them.

Under the third amended complaint, however, none of the substantive claims are timely as to any of the defendants. As stated above, the only acts of the defendants that give rise to an injury for which Bankers has standing to sue are those relating to the bribery of Judge Ballenger.

This bribery resulted in two decisions which caused Bankers injury. These decisions were rendered in November 1978 and January 1979. Bankers necessarily was aware of the injury caused by those rulings on or shortly after the date they were issued. Therefore, Judge Ballenger's January 1979 ruling is the last act on which Bankers may rely. Under the three-year statute of limitations, Bankers had to commence its RICO action to recover for these injuries by January 1982. Bankers, however, did not institute this action until August 1982. Consequently the substantive RICO claims are untimely as to all three defendants.

 Bankers cannot claim that the payment of its own legal expenses at a later date constitutes a basis for postponing the accrual of its cause of action. A claim for damages accrues when the act causing the injury occurs, not when the injured party ceases to incur more damages. *See Korn v. Merrill,* 403 F.Supp. 377, 388 (S.D.N.Y. 1975), *aff'd,* 538 F.2d 310 (2d Cir.1976). If Bankers was able to postpone accrual of its claim until it had paid its legal expenses, then Bankers could keep its claim open indefinitely simply by protracting the litigation. This would be contrary to the purpose of the statute of limitations.

 The Court found that a different accrual rule applies in the case of a continuing civil conspiracy. Under this rule, each time a member of the conspiracy commits an overt act in furtherance of the conspiracy, a cause of action accrues against all the persons who are then members of the conspiracy for the damages caused by that act. Membership in a conspiracy, once established, is presumed to continue until withdrawal is affirmatively shown. Therefore, since the original complaint alleged that within the limitations period Braten and Rhoades committed predicate acts which caused Bankers injury, and that those acts were committed in furtherance of a conspiracy of which Soifer was a part, Bankers' conspiracy claim was ruled timely even as to Soifer.

 Under the third amended complaint, however, the acts that Braten and Rhoades allegedly committed during the limitations period did not cause Bankers to suffer a direct and distinct injury. It is well established that in a civil action for conspiracy the plaintiff may only recover for the injury caused by the specific acts—there is no recovery for the conspiracy itself. *Rutkin v. Reinfeld,* 229 F.2d 248, 252 (2d Cir.), *cert. denied,* 352 U.S. 844, 77 S.Ct. 50, 1 L.Ed.2d 60 (1956); *Korry v. International Telephone & Telegraph Corp.,* 444 F.Supp. 193, 195 (S.D.N.Y.1978). It is equally well established that a civil conspiracy claim accrues at the time of each injury. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971); *Rutkin,* 229 F.2d at 252; *Chodos v. Federal Bureau of Investigation,* 559 F.Supp. 69, 74 (S.D.N.Y.), *aff'd,* 697 F.2d 289 (2d Cir. 1982), *cert. denied,* 459 U.S. 1111, 103 S.Ct. 741, 74 L.Ed.2d 962 (1983). Under these principles, subsequent acts of a conspirator can support a new claim for injuries resulting from those acts, but they cannot postpone accrual of a claim seeking recovery for an earlier injury.

The Second Circuit explained the rationale underlying the accrual of civil conspiracy claims in *Rutkin v. Reinfeld.* There, the court ruled that a conspiracy claim brought under state law to recover for an injury in 1931 was untimely even though plaintiff claimed the conspiracy continued until commencement of the suit in 1948. Concluding that a claim for civil conspiracy accrues "as soon as the damage ... is inflicted," the court reasoned that tolling the statute of limitations until termination of the conspiracy would "make a shambles of the statute of limitations and pervert its salutary purpose to set stale claims at rest." *Id.* at 252. In subsequent cases, the courts of this circuit have applied this accrual rule to civil conspiracy claims brought under the civil rights laws, *Singleton v. City of New York,* 632 F.2d 185, 192 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981), to civil conspiracy claims brought under the antitrust laws, *Skouras Theatres Corp. v. Radio-Keith-Orpheum Corp.,* 193 F.Supp.

401 (S.D.N.Y.1961), and to civil conspiracy claims brought under the False Claims Act. *Blusal Meats, Inc. v. United States*, 638 F.Supp. 824 (S.D.N.Y.1986), *aff'd*, 817 F.2d 1007 (2d Cir.1987).

In *Compton v. Ide*, 732 F.2d 1429 (9th Cir.1984), the Ninth Circuit applied the same accrual rule to a civil conspiracy claim brought under RICO. The court reasoned that the statutory requirement that plaintiff suffer injury in its business or property suggests that the normal federal rule on accrual should apply to civil RICO actions alleging conspiracy. *Id.* at 1433.

In deciding Bankers' motion for judgment on the pleadings, this Court followed *Compton* and applied the general rule for the accrual of civil conspiracies. On reargument, the Court has not been persuaded that this was erroneous. Under the third amended complaint, however, Bankers has not alleged any legally cognizable injury within the applicable limitations period. Although Bankers alleges that Braten and Rhoades acted to further the conspiracy within three years of Bankers' complaint, none of those acts caused Bankers to suffer a direct and distinct injury. Consequently, the conspiracy claims are untimely.

### III. *Conclusion*

For the foregoing reasons, defendants' motion to reargue is granted, and upon reargument defendants' motion to dismiss pursuant to rule 12(b)(6), Fed.R.Civ.P., is granted.

SO ORDERED.