THE CADLE COMPANY,
et al., Plaintiffs,

v.

Charles A. FLANAGAN,
et al., Defendants.

No. CIV.3:01 CV 531 AVC.

United States District Court,
D. Connecticut.

July 3, 2003.

Edward C. Taiman, Jr., Jill Hartley, Michael G. Albano, Sabia & Hartley, LLC, Hartford, CT, F. Dean Armstrong, Flossmoor, IL, for Plaintiffs.

Douglas S. Skalka, James A. Lenes, Neubert, Pepe & Monteith, New Haven, CT, Robert G. Skelton, Law Office Of Robert G. Skelton, Fairfield, CT, for Defendants.

## RULING ON THE DEFENDANT, CHARLES A. FLANAGAN'S, MOTION TO DISMISS

COVELLO, District Judge.

This is an action for damages and equitable relief brought by the Cadle Company ("Cadle") and D.A.N. Joint Venture, A Limited Partnership ("DJV") (collectively, "the plaintiffs") pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and common law tenets concerning an alleged tortious interference with the execution of a judgment.

The defendant, Charles A. Flanagan ("Flanagan"), has filed the within motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that the second amended complaint fails to state a cause of action against him for which relief can be granted.

The issues presented are: 1) whether the second amended complaint alleges with sufficient particularity a RICO cause of action under 18 U.S.C. § 1962(b), § 1962(c) and § 1962(d); and 2) whether a common-law cause of action for tortious interference with the execution of a judgment exists under the laws of the state of Connecticut, and if so, whether the second amended complaint adequately sets forth such an action.

For the reasons set forth hereafter, the motion to dismiss the RICO cause of action is DENIED, and the motion to dismiss the tortious interference cause of action is GRANTED.

### FACTS

The second amended complaint alleges that Flanagan fraudulently concealed assets in order to safeguard those assets from his creditors. Specifically, the second amended complaint alleges: 1) that "in 1992 Flanagan submitted financial statements to Connecticut banks repre-

senting that he had a net worth of over $4,355,000, with an annual salary of over $300,000"; 2) that "Flanagan's largest single asset was his 50% ownership interest in [the d]efendant Thompson & Peck, Inc. (the 'Insurance Agency')"; 3) that "Flanagan represented that his 50% ownership interest in the Insurance Agency was worth $2,500,000"; 4) that Flanagan "borrowed millions of dollars from Connecticut banks and other banks in the New England area to acquire millions of dollars in apartment buildings and other income producing real estate"; 5) that when the "local real estate market took a downturn in 1993," property transfers and a mortgage lien "were implemented . . . in an effort to delay, hinder or defraud his creditors and to shield his rental properties from the claims of his creditors"; 6) that by "1995, a number of the banks that had loaned money to Flanagan had failed and were taken over by the FDIC"; 7) that "by misrepresenting his true financial condition to the FDIC," Flanagan was able "to settle many of his real estate bank debts . . . [at] a substantially discounted sum"; 8) that "Flanagan refused . . . to honor his word and repay the loan balances that were owed to the banks that are [p]laintiffs' predecessors in interest"; 9) that Flanagan "warned [the p]laintiffs that if they did not accept a substantially discounted sum [for the loans, he] would file bankruptcy, and there would be nothing left for [the p]laintiffs"; 10) that "[i]n 1996 [Cadle] filed suit against Flanagan in . . . United States District Court . . . in connection with Flanagan's default on a $75,000 loan owed to [the plaintiffs]"; 11) that "on March 20, 1997 a final judgment was entered . . . against Flanagan and in favor of [Cadle] in the amount of $93,519.38"; 12) that after several court proceedings to obtain payment from Flanagan during the nearly 20 months following entry of the judgment against him, "on November 19, 1998 Flanagan tendered $99,542.87 into the registry of the district court as payoff" for that judgment; 13) that "Flanagan still wanted to recoup the $99,542.87 that he was forced to pay [Cadle]"; 14) that "on February 17, 1999 Flanagan . . . filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Connecticut in New Haven"; 15) that thereafter "Flanagan filed a bankruptcy adversary proceeding against [Cadle] alleging that the $99,542.87 that was paid to [Cadle] was a voidable preference, and thus subject to recoupment by Flanagan through § 547(b) of the Bankruptcy Code"; 16) that "Flanagan had transferred, hidden or shielded his assets from the claims of [the p]laintiffs" in the bankruptcy action"; 17) that "Flanagan did not list in his bankruptcy schedules the substantial rental income that he received and was continuing to receive from . . . the three rental properties that Flanagan had not disclosed in connection with his bankruptcy filing"; 18) that "on January 25, 2000 Flanagan was arrested by the New Haven police for failing to provide heat and water" for certain tenants in New Haven, Connecticut; 19) that the arrest "prompted an investigation by [the p]laintiffs which eventually unearthed Flanagan's ownership interest in the three rental properties"; and 20) that "[the p]laintiffs have suffered direct, proximate and consequential damages as a result of [Flanagan's and others' acts] in an amount not less than $2,400,000 which includes the amount that [p]laintiffs would have been able to collect under [the p]laintiffs' judgment and other debt claims against Flanagan."

On April 4, 2001, the plaintiffs filed the original complaint against Flanagan and others. On April 20, 2001, the plaintiffs filed their first amended complaint, and on August 30, 2002, they filed the second amended complaint. On October 10, 2002, Flanagan filed his within motion to dismiss.

## STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "merely . . . asses[es] the legal feasibility of the complaint, [it does] not . . . assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir.1984). When ruling on a motion to dismiss, the court must presume that the well-pleaded facts alleged in the complaint are true and draw all reasonable inferences from those facts in favor of the plaintiff. *See Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993). A court may dismiss a complaint at this stage only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## DISCUSSION

### A. *RICO*

Section 1964(c) of the RICO statute, 18 U.S.C. § 1961 *et seq.*, permits a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c) (2000). A plaintiff must therefore allege a violation of section 1962 in order to recover damages under RICO.

■ Section 1962 requires the plaintiff to allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'rack-

eteering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).

Section 1962(b) provides in relevant part: "It shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b) (2000).

Section 1962(c) provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c) (2000).

Section 1962(d) provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d) (2000).

### *Racketeering Activity*

Flanagan first asserts that the second amended complaint should be dismissed because the "allegations comprising the RICO claim . . . are expressly exempted from the definition of 'racketeering activity.'" Specifically, he argues that "allegations of bankruptcy fraud in a RICO complaint that fall within the scope of [18 U.S.C. § 157[1]] are exempted by [18 U.S.C.

---

1. Section 157, entitled "Bankruptcy fraud", provides: "A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or at-

tempting to do so (1) files a petition under title 11; (2) files a document in a proceeding under title 11; or (3) makes a false or fraudulent representation, claim, or promise con-

§ 1961(1)(D) [2]] and cannot constitute predicate acts under RICO."

■ In response, the plaintiffs maintain that they "have adequately alleged that Flanagan engaged in . . . predicate acts of bankruptcy fraud . . . to state a claim under RICO." Specifically, they assert that, "while a bankruptcy fraud claim under 18 U.S.C. § 157 does not constitute a defined RICO predicate act, a claim of bankruptcy fraud under 18 U.S.C. § 152 [3] can constitute a predicate act and support a claim under RICO". The court agrees with the plaintiffs.

Title 18, section 1961(1) of the United States Code sets forth the various predicate acts that can give rise to a civil RICO cause of action. Section 1961(1)(D) allows a RICO action for "*any* offense involving fraud connected with a case under title 11 (*except* a case under section 157 of [title 18])." 18 U.S.C. § 1961(1)(D) (2000) (emphasis added).

■ "When Congress provides exceptions in a statute . . . [t]he proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *United States v. Johnson*, 529 U.S. 53, 58, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000). Only section 157 violations are excluded as the basis for a RICO cause of action. There is, however, no indication in the language of the statute that section 152 bankruptcy violations are excluded as well.

To the contrary, in *Bankers Trust v. Feldesman*, 648 F.Supp. 17 (S.D.N.Y.1986), *on reargument*, 676 F.Supp. 496 (S.D.N.Y. 1987), *rev'd sub nom. on other grounds*, *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir.1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1643, 104 L.Ed.2d 158 (1989), the court addressed a similar case where at least two of the alleged predicate acts involved violations of Title 11, section 152 and constituted a RICO cause of action. The court concluded that separate offenses of section 152 constituted separate predicate acts for purposes of RICO. *Bankers Trust v. Feldesman*, 648 F.Supp. 17, 24 (S.D.N.Y.1986). "[I]t is clear that a defendant may be separately indicted for fraudulently transferring an asset and subsequently concealing the same asset by making false statements . . . .[T]his is sufficient to allege two separate violations of the bankruptcy fraud statute, and hence two separate acts of racketeering activity." *Id.*

■ The allegations in this case are that Flanagan fraudulently transferred a portion of his assets to others prior to filing bankruptcy and that he did so in order to keep those assets out of the bankruptcy estate and away from his creditors. The second amended complaint further alleges

cerning or in relation to a proceeding under title 11 . . . shall be fined under this title, imprisoned not more than 5 years, or both." 18 U.S.C. § 157 (2000).

2. Section 1961(1)(D) provides: "As used in this chapter (1) 'racketeering activity' means. . .(D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title). . . ." 18 U.S.C. § 1961(1)(D) (2000).

3. Section 152, entitled "Concealment of assets; false oaths and claims; bribery" provides in pertinent part: "A person who (1)

knowingly and fraudulently conceals from a custodian, trustee. . .or other officer of the court charged with control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor; (2) knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11; (3) knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury. . .in relation to any case under title 11. . .shall be fined under this title, imprisoned not more than 5 years, or both." 18 U.S.C. § 152 (2000).

that Flanagan filed false bankruptcy accounts in connection with his Title 11 proceeding. Taken as true, these allegations are sufficient to establish that Flanagan engaged in racketeering activity for purposes of RICO.

### Injury from RICO Violations

■ Flanagan next argues that "none of Flanagan's post-petition conduct could have caused [a RICO] injury to the [p]laintiffs." Specifically, he asserts that "because from the [bankruptcy filing date] forward ... the [p]laintiffs were enjoined from pursuing collection of the alleged $2,400,000 in judgments and claims against Flanagan ... none of Flanagan's post-petition conduct would have ... deprived the [p]laintiffs of any assets, or otherwise injured the [p]laintiffs in any way."

The plaintiffs respond that they have been injured by Flanagan's post-petition conduct and accordingly, the second amended complaint sufficiently alleges a RICO injury. Specifically, they assert that Flanagan did not list all of his assets in his bankruptcy schedules, including rental properties and, in this regard, Flanagan concealed the post-petition income derived from these assets from the plaintiffs and, therefore, they have been injured in their business or property by reason of Flanagan's RICO violations. The court agrees with the plaintiffs.

In *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1643, 104 L.Ed.2d 158 (1989), the court concluded that the plaintiff had sufficiently alleged a RICO injury where a plaintiff demonstrated a proprietary type of damage and alleged that the plaintiff had been deprived of various sums of money by the defendants' activities. *See Bankers Trust Co. v. Rhoades,* 859 F.2d 1096 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1643, 104 L.Ed.2d 158

(1989) discussing *Bankers Trust Co. v. Rhoades,* 741 F.2d 511, 515 (1984).

The second amended complaint alleges that Flanagan fraudulently transferred assets in contemplation of shielding those assets from the bankruptcy estate. It further alleges that, after filing bankruptcy, Flanagan concealed the income derived from those assets from his creditors and thus deprived the plaintiffs of their property and injured their business. Taken as true, these allegations are sufficient to support a RICO injury stemming from Flanagan's conduct.

### Enterprise

[6] Flanagan next argues that plaintiffs "have failed to plead facts sufficient to establish an enterprise" for purposes of 18 U.S.C. §§ 1962(b) or (c). Specifically, he asserts that "the [p]laintiffs have failed to allege an ongoing organization, formal or informal or that Flanagan and others function as a continuing unit."

The plaintiffs respond that they have "adequately pled the existence of a RICO enterprise" including an "association-in-fact enterprise." Specifically, they contend that the purpose of Flanagan's enterprise is "to accomplish the fraudulent transfer and continuing custodianship of Flanagan's assets to shield those assets from the claims of [p]laintiffs" and that Flanagan "enlisted the support of numerous friends, family members and business associates to help him with his fraudulent scheme." The court agrees that the plaintiffs have adequately alleged the existence of a RICO enterprise as an element of both § 1962(b) and § 1962(c).

■ 18 U.S.C. § 1961(4) provides that: an " 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The Supreme Court

has clarified that an enterprise may also include "a group of persons associated together for a common purpose of engaging in a course of conduct" over a period of time and encompasses both legitimate and illegitimate enterprises. *United States v. Turkette,* 452 U.S. 576, 582–5, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). While "a solitary entity cannot, as matter of law, simultaneously constitute both the RICO 'person' whose conduct is prohibited and the entire RICO 'enterprise' whose affairs are impacted by the RICO person ... a single entity [can] be both the RICO 'person' and one of a number of members of the RICO 'enterprise.'" *Cullen v. Margiotta,* 811 F.2d 698, 729–30 (2d Cir.1987), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987).

 An association-in-fact enterprise is proven by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). The existence of an association-in-fact enterprise is often more readily proven by what it does, rather than by abstract analysis of its structure. *U.S. v. Coonan,* 938 F.2d 1553, 1559 (2d Cir.1991), *cert. denied,* 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992) (citing *United States v. Bagaric,* 706 F.2d 42, 55 (2d Cir.1983), *cert. denied,* 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983)). Thus, proof of various predicate acts may help establish the existence of the enterprise. *U.S. v. Coonan,* 938 F.2d 1553, 1560 (2d Cir.1991).

In this case, the second amended complaint alleges that "Flanagan's financial empire" is the "enterprise" and that several persons functioned together to form and maintain that enterprise. Of those per-

sons, Flanagan is admittedly one, but not the only one. As noted above, the Second Circuit has held that an individual may simultaneously be both a RICO person and a member of a RICO enterprise. *Cullen v. Margiotta,* 811 F.2d 698, 729–30 (2d Cir.1987), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). Consequently, even if there is some overlap between the "financial empire" and Flanagan, that is not dispositive at this stage. Taken as true, the allegations of the second amended complaint adequately support the contention that Flanagan was both a RICO "person" and a member of an association-in-fact "enterprise."

Moreover, the Second Circuit has held that "[a]n 'enterprise' under the RICO statute may consist of more than one entity, so long as those entities 'have been connected by a defendant's participation in them through a pattern of racketeering activity.'" *United States v. Butler,* 954 F.2d 114 (2d Cir.1992) (quoting *United States v. Stolfi,* 889 F.2d 378, 380 (2d Cir.1989)).

As a whole, the second amended complaint alleges that Flanagan participated in various business entities through a pattern of racketeering thereby connecting those entities to form an enterprise. Taken as true, the allegations further support the existence of a RICO enterprise.

*Pattern of Racketeering Activity and Continuity*

Flanagan next argues that the plaintiffs "have failed to plead facts sufficient to establish a pattern of racketeering activity under RICO." Specifically, he asserts that "the remaining post-petition allegations[4] took place over less than two years" and, thus, "[c]losed-ended continuity ... has

---

4. Throughout his motion to dismiss and reply brief, Flanagan relies heavily on his contention that only post-bankruptcy-petition acts

can give rise to a RICO cause of action. However, Flanagan cites no authority for this argument.

not been alleged." He further argues that "the post-petition allegations reveal no threat of continuing criminal activity necessary for open-ended continuity."

The plaintiffs respond that they "have adequately alleged a sufficient RICO 'pattern' to enable them to prove their RICO claims at trial" and have "adequately alleged both open-ended ... and closed-ended continuity." Specifically, they argue that "Flanagan engaged in numerous inter-related predicate acts over a 10–year period of time" and that while "Flanagan's bankruptcy filing may ... prohibit [p]laintiffs from claiming damages from Flanagan's pre-petition wrongful conduct, his bankruptcy filing does not serve to erase [evidence] of Flanagan's fraudulent conduct ...." They further contend that "the very nature of Flanagan's past wrongful conduct poses a distinct threat of continuing wrongful conduct" and that "allegations of mail fraud, wire fraud and bankruptcy fraud in connection with the fraudulent transfers and 'continuing custodianship' of Flanagan's assets ... involve a distinct threat of repetition continuing indefinitely into the future ...." The court agrees that the plaintiffs have established both closed- and open-ended continuity sufficient to constitute a pattern of racketeering activity.

 Section 1961(5) provides: " 'pattern of racketeering activity' requires at least two acts of racketeering activity ... the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5) (2000). The United States Supreme Court has determined that the definition in section 1961(5) "places an outer limit on the concept of a pattern of racketeering activity ...." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). "[T]he statement that a pattern 'requires at least' two predicates implies

'that while two acts are necessary, they may not be sufficient.' " *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, n. 4, 105 S.Ct. 3275, 87 L.Ed.2d 346; *Id.* at 527, 105 S.Ct. 3275 (1985)). In order to prove "a pattern of racketeering activity a plaintiff ... must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (emphasis in original). Two or more acts are related if the acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240. However, the relatedness of "racketeering activities is not alone enough to satisfy § 1962's pattern element." *Id.* "[I]t must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *Id.* (emphasis in original). "What a plaintiff ... must prove is continuity of racketeering activity, or its threat, *simpliciter* ....This may be done in a variety of ways, thus making it difficult to formulate in the abstract any general test for continuity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). " 'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 249. The Supreme Court has held that a RICO complainant "may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time .... [or by proving] the *threat* of continuity" of relat-

ed predicates. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 242, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (emphasis in original).

 The second amended complaint alleges that several persons, including friends, family members and various legal entities allegedly created by Flanagan, schemed together to defraud various financial institutions. The predicate acts supporting the scheme took place over several years, but within a ten-year period. Viewing the second amended complaint in a light most favorable to the plaintiffs, it sufficiently alleges closed-ended continuity by setting forth a series of related predicate acts extending over a substantial period of time that was within the statutory time frame. The second amended complaint also alleges that the "continuing custodianship" of Flanagan's assets involves "a distinct threat of repetition continuing indefinitely into the future" since the enterprise is "dedicated to hiding and shielding and continuing the custodianship over Flanagan's assets." Taken as true and drawing all reasonable inferences therefrom, the second amended complaint sufficiently alleges open-ended continuity. Consequently, under either rationale, the second amended complaint adequately sets forth a pattern of racketeering activity as defined in § 1961(5).

*Activities of Enterprise Affecting Interstate Commerce*

 Flanagan next argues that the plaintiffs "have failed to plead facts sufficient to show that the alleged activities of the enterprise affected interstate or foreign commerce." Specifically, he argues that they have not alleged that Flanagan has affected interstate or foreign commerce by "allegedly receiving rental income and allegedly providing false testimony and documents in his bankruptcy case," nor have they even "claim[ed] to have in-

cluded ... a minimal nexus within their post-petition allegations."

 The plaintiffs respond that they "have adequately alleged a sufficient nexus with interstate commerce to state a claim under RICO." Specifically, they argue that "the required nexus between the enterprise and interstate commerce is 'minimal.'" The court agrees with the plaintiffs.

With respect to the sufficiency of an interstate commerce nexus under RICO, the Second Circuit has noted that, "[i]n determining what connections with interstate commerce must be proven ... to establish a violation of § 1962, the courts have ruled that the impact need not be great." *United States v. Barton,* 647 F.2d 224 (2d Cir.1981); *see also United States v. Miller,* 116 F.3d 641 (2d Cir.1997), *cert. denied,* 524 U.S. 905, 118 S.Ct. 2063, 141 L.Ed.2d 140 (1998) (concluding *de minimis* effect on interstate commerce is sufficient under RICO); *United States v. Doherty,* 867 F.2d 47 (1st Cir.1989), *cert. denied,* 492 U.S. 918, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989) ("RICO requires no more than a slight effect upon interstate commerce"). Similarly, the Fifth Circuit has observed that the "nexus with interstate commerce required by RICO is minimal." *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350, 1353 (5th Cir.1985) (internal quotations omitted). In *R.A.G.S. Couture,* the court found a sufficient nexus with interstate commerce where the "plaintiff ... alleged that the defendants used an instrumentality of interstate commerce, the United States Postal Service, to execute their fraudulent scheme." *Id.* The court found further support to establish a nexus by the fact that "the plaintiff apparently was involved in interstate commerce and the defendants' scheme adversely affected it." Consequently the court concluded that, those "facts, if proved at trial, would pro-

vide the link with interstate commerce necessary under the statute." *Id.*

In the instant case, the second amended complaint alleges, *inter alia,* that the defendants, including Flanagan, used the United States Postal Service to execute portions of the fraudulent scheme and that those actions adversely affected plaintiffs' business which is involved with and operates in interstate commerce. Reading the second amended complaint as a whole and construing the allegations in a light most favorable to the plaintiffs, the second amended complaint alleges a sufficient nexus with interstate commerce under RICO.

*Injury Stemming from Acquisition or Maintenance of the Enterprise*

██ Flanagan next argues that plaintiffs fail to "satisfy the pleading requirements for the elements of enterprise, pattern of racketeering, and interstate commerce" which are necessary under Section 1962(b)[5]. He further contends that "[a]bsent from the post-petition allegations, is any claim that Flanagan controlled the enterprise at issue or that he 'acquired' or 'maintained' the enterprise through a pattern of racketeering activity" and that the plaintiffs have failed to "allege an injury stemming from the 'acquisition or maintenance' of the enterprise that is distinct from the injuries resulting from predicate acts."

The plaintiffs respond that they "have adequately alleged a violation of § 1962(d) [sic] of RICO." Specifically, they assert that they "have adequately alleged a RICO injury in compliance with the RICO pleading requirements set forth by the Supreme Court and the Second Circuit" and that they "have in fact alleged injury from the [d]efendants['] overall fraudulent scheme."

The United States Court of Appeals for the Seventh Circuit has determined that "control within the meaning of the statute need not be formal—need not be the kind of control that is obtained, for example, by acquiring a majority of the stock of a corporation." *Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 653 (7th Cir.1984) (citing *United States v. Jacobson,* 691 F.2d 110, 112 (2d Cir.1982) (per curiam)). Following the Seventh Circuit's rationale, the United States Court of Appeals for the Ninth Circuit has held that "a finding of control under § 1962(b) is best determined by the circumstances of each case and does not require formal control such as the holding of majority stock or actual designation as an officer or director." *Ikuno v. Yip,* 912 F.2d 306, 310 (9th Cir.1990) (citing *Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 653 (7th Cir.1984)). Similarly, the United States Court of Appeals for the District of Columbia upheld a district court's ruling that a defendant "indirectly exercised control over [a RICO enterprise by exercising control over an entity that] had actual control over [the enterprise, thus giving the defendant] derivative control over [the enterprise]." *BCCI Holdings (Luxembourg) Societe Anonyme v. Khalil,* 56 F.Supp.2d 14 (D.D.C.1999), *rev'd in part and aff'd in part by BCCI Holdings (Luxembourg), S.A. v. Khalil,* 214 F.3d 168 (D.C.Cir.2000).

The second amended complaint alleges throughout that, at the very least, Flanagan maintained control of the RICO enterprise through his actions and by his control, direct or indirect, of various business entities comprising the enterprise. It further alleges that because of such actions

---

**5.** Section 1962(b) provides in relevant part: "It shall be unlawful for any person through a pattern of racketeering activity ... to acquire *or maintain,* directly or indirectly, any inter-

est in *or control of* any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b) (2000) (emphasis added).

and control, the plaintiffs have been directly injured by Flanagan. If Flanagan, as the second amended complaint alleges, had not been at the helm of the fraudulent scheme, controlling his financial empire and committing various prohibited acts, the plaintiffs would not have been injured in the manner described in the complaint.

*Liability as Co–Conspirator Under § 1962(d)*

■■■■ Flanagan finally asserts that because "the [p]laintiffs have failed to sufficiently allege violations of Sections 1962(b) or (c), the [p]laintiffs['] claim under Section 1962(d) must fail as well."

The plaintiffs first respond that they "have in fact adequately stated claims against Flanagan under § 1962(b) and § 1962(c)". They further contend that, "in connection with [this court's] orders ... [p]laintiffs have in fact adequately alleged RICO claims against the other [d]efendants. Accordingly, [the plaintiffs] can assert a § 1962(d) conspiracy claim against Flanagan."

■■■■ "[T]he core of a RICO civil conspiracy is an agreement to commit predicate acts." *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25 (2d Cir.1990). The complaint must allege that the defendant "wilfully participated in at least two ... predicate offenses, that the predicate offenses constituted a pattern of racketeering activity, and that [the defendant] conspired to participate in the affairs of [the enterprise] by engaging in the predicate offenses." *United States v. Ruggiero,* 726 F.2d 913, 923 (2d Cir.1984), *cert. denied sub nom., Rabito v. U.S.,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984). Conspiracy may also "be inferred from circumstantial evidence of [the defendant's] status in the enterprise and his knowledge of the wrongdoing." *Morrow v. Black,* 742 F.Supp. 1199, 1208 (E.D.N.Y. 1990).

The second amended complaint alleges that Flanagan and others willfully and knowingly committed various acts over a period of time in order to defraud Flanagan's creditors. As addressed previously, it also adequately alleges that Flanagan's acts constituted a pattern of racketeering activity. Finally, the second amended complaint alleges that Flanagan was the lead conspirator in the entire scheme and that he and the other defendants agreed to shield his assets. Examining the second amended complaint in its entirety and viewing the facts in a light most favorable to the plaintiffs, the second amended complaint adequately alleges a civil RICO conspiracy under § 1962(d).

### B. *Tortious Interference with Enforcement of Judgments*

With respect to the second count of the second amended complaint, Flanagan next argues that "Count Two of the Complaint, alleging tortious interference with the [p]laintiffs' right to enforce, and realize benefits from, their judgments against Flanagan, should be dismissed ...." Specifically, Flanagan asserts that "[a]s long as Flanagan remains a debtor in bankruptcy protected by the automatic stay, no conduct by him can be deemed to interfere with a creditor's attempt to enforce a pre-petition judgment or claim."

The plaintiffs respond that since this court previously ruled on this issue in favor of the other named defendants, they "have no new law, authorities or argument to submit to the Court on that issue."

■■■■ The court has previously determined that the common law cause of action alleged by the plaintiffs, tortious interference with the enforcement of a judgment, is not recognized under the laws of the State of Connecticut. The plaintiffs have failed to provide any further support for their contention that the action is cogniza-

ble. Accordingly, the count of the plaintiffs' second amended complaint asserting tortious interference with the execution of a judgment with respect to Flanagan is dismissed.

### CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss (document no. 101) is granted in part and denied in part. The motion is granted to the extent it seeks dismissal of the alleged cause of action for common law tortious interference with execution of a judgment. The motion is denied with respect to the RICO cause of action.